PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

OHIO RIVER VALLEY ENVIRONMENTAL
COALITION, INCORPORATED; HOMINY
CREEK PRESERVATION ASSOCIATION,
INCORPORATED; CITIZENS COAL
COUNCIL,
                    *Plaintiffs-Appellees,*

v.

GREEN VALLEY COAL COMPANY,
                    *Defendant-Appellant,*

and

MICHAEL C. CASTLE; MICHAEL O.
CALLAGHAN, Director of the West
Virginia Division of Environmental
Protection; STEPHANIE R.
TIMMERMEYER, Acting Secretary of
the West Virginia Department of
Environmental Protection; GALE A.
NORTON, Secretary of the Interior,
                    *Defendants,*

MINGO LOGAN COAL COMPANY; COAL
MAC, INCORPORATED,
                    *Intervenors/Defendants.*

No. 06-1475

Appeal from the United States District Court
for the Southern District of West Virginia, at Huntington.
Robert C. Chambers, District Judge.
(3:00-cv-00058)

Argued: September 25, 2007

Decided: December 19, 2007

Before MICHAEL and MOTZ, Circuit Judges,
and Joseph F. ANDERSON, Jr., United States District Judge for
the District of South Carolina, sitting by designation.

---

Affirmed in part, vacated in part, and remanded by published opinion. Judge Michael wrote the opinion, in which Judge Motz and Judge Anderson joined.

---

**COUNSEL**

**ARGUED:** Robert Gale McLusky, JACKSON & KELLY, P.L.L.C., Charleston, West Virginia, for Appellant. Walton Davis Morris, Jr., Charlottesville, Virginia, for Appellees. **ON BRIEF:** Erin E. Magee, JACKSON & KELLY, P.L.L.C., Charleston, West Virginia, for Appellant.

---

**OPINION**

MICHAEL, Circuit Judge:

Green Valley Coal Company (Green Valley) appeals the award of attorney fees in a citizen suit brought under the Surface Mining Control and Reclamation Act (SMCRA or the Act), 30 U.S.C. § 1201 *et seq*. Initially, three environmental organizations, Ohio River Valley Environmental Coalition, Inc., Hominy Creek Preservation Association, Inc., and Citizens Coal Council (collectively, OVEC), sued the Director of the West Virginia Division of Environmental Protection (the state agency) to mandate changes in the way the agency enforces its regulatory program under SMCRA. In its complaint against the state agency, OVEC alleged that certain mining permit applications filed by Green Valley were deficient, and Green Valley intervened to defend the validity of its applications. The district court issued a preliminary injunction enjoining the state agency from approving one of Green Valley's applications, though the injunction was later dissolved as moot after Green Valley withdrew the application. Later, OVEC

filed supplemental claims against Green Valley in this litigation and a citizen complaint in the administrative arena, alleging SMCRA violations at one of Green Valley's mining sites. Partly as a result of OVEC's efforts, Green Valley took remedial actions at the site, which led OVEC to dismiss its claims voluntarily. OVEC ultimately moved for an award of attorney fees under SMCRA's fee-shifting provision, 30 U.S.C. § 1270(d). The district court made a fee award that included prejudgment interest. We affirm the fee award with respect to the preliminary injunction phase (phase one) of the litigation. However, we vacate the fee award with respect to the supplemental claims phase (phase two) because that award includes fees for OVEC's efforts in the administrative arena, and fees for these efforts are not recoverable under § 1270(d). On remand the district court may reconsider, in light of the applicable standard, whether a fee award is appropriate for OVEC's efforts in phase two of the litigation. We also affirm the award of prejudgment interest but vacate and remand to allow the district court to correct an apparent miscalculation.

I.

A.

OVEC started this litigation in January 2000 by filing a lawsuit under SMCRA's citizen suit provision, 30 U.S.C. § 1270, against the Director of the West Virginia Division of Environmental Protection. Congress enacted SMCRA to, among other things, "assure that surface coal mining operations are so conducted as to protect the environment." 30 U.S.C. § 1202(d). To further its goals, SMCRA creates an arrangement that allows a state to "assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations" within its borders if the federal Secretary of the Interior (the Secretary) approves the state's regulatory program. 30 U.S.C. § 1253; *see Bragg v. West Virginia Coal Ass'n*, 248 F.3d 275, 288-89 (4th Cir. 2001). However, if an approved state program fails to enforce properly the minimum national standards established by SMCRA, the Secretary may revoke the state's exclusive jurisdiction and reassume regulatory authority. 30 U.S.C. §§ 1254(a), 1271(b); *see Bragg*, 248 F.3d at 288-89. West Virginia received approval for its SMCRA regulatory program in 1981, and the state agency continues to administer the program. *See* 30 C.F.R. § 948.10.

OVEC asserted in its initial complaint that the state agency was consistently failing to enforce numerous provisions in the applicable surface mining regulations. The regulations relevant in this appeal require a coal operator to include in each surface mining permit application an assessment of the probable hydrologic impact of the proposed mining on the surrounding area. *See* 30 U.S.C. § 1257(b)(11). The regulations bar approval of a permit application unless this assessment, known as a cumulative hydrologic impact assessment (CHIA), demonstrates that the proposed mining operation will not cause material damage to the surrounding area. *See* 30 U.S.C. § 1260(b). OVEC's complaint alleged, among other things, that the state agency had a pattern and practice of approving permit applications that contained inadequate CHIAs. The complaint identified numerous applications, some approved and others still pending, that were allegedly inadequate. OVEC sought a declaratory judgment that the state agency has a mandatory duty to deny any permit application that is not supported by an adequate CHIA and an injunction barring approval of all inadequate pending applications.

Green Valley, the intervenor in this case, had filed two of the permit applications that OVEC's complaint identified as inadequate. These two applications, known as incidental boundary revisions 6 and 7 (IBR 6 and IBR 7), sought revisions to existing permits related to Green Valley's operations in the Hominy Creek watershed in Nicholas County, West Virginia. These revisions were necessary because the refuse area authorized by the existing permit was nearing its capacity. IBR 6 proposed a long-term solution to this problem that would nearly double the size of the authorized refuse area while also converting it from a side-hill fill to a valley fill. IBR 7, on the other hand, was designed to meet the operation's short-term refuse needs during the time required for implementation of the plan proposed by IBR 6.

OVEC's complaint asserted that Green Valley's permit applications for IBR 6 and IBR 7 were deficient in failing to include at least three separate pieces of information: (1) complete and accurate hydrologic baseline information; (2) an adequate hydrologic monitoring plan; and (3) an adequate statement demonstrating that the proposed operation would not cause violations of applicable water quality standards. The practical effect of these alleged deficiencies was that the

permit applications, in OVEC's view, contained neither adequate information detailing the existing iron problem in Hominy Creek nor a sufficient basis for concluding that the proposed operations would not worsen the iron problem.

On June 1, 2000, roughly four months after this lawsuit was filed, the state agency informed OVEC that IBR 6 and IBR 7 would soon be approved. OVEC responded by moving first for a temporary restraining order on June 5 and then for a preliminary injunction on June 13. On June 7 Green Valley moved to intervene in the case "to protect its property interest in both its mining operations and its surface mining permit." J.A. 170. The court granted Green Valley's motion to intervene, and the company participated fully in the injunction proceedings.

Following a four-day hearing in mid-June 2000, the district court issued a preliminary injunction that enjoined the state agency from approving IBR 6. The court denied relief with respect to IBR 7 subject to the condition that the state agency amend the CHIA to account for certain information adduced at the hearing. With respect to IBR 6, the court found that the "CHIA does not include an adequate assessment of the current [iron] problem" and that OVEC was "likely to prevail on one of its principal challenges to the sufficiency of the CHIA." J.A. 242. The court also concluded that the baseline data in the CHIA was questionable and that the CHIA's groundwater monitoring plan was inadequate. In its decision the court highlighted evidence "tending to show that the CHIA had an insufficient basis for concluding" (1) that the existing iron problem in Hominy Creek derived mostly from an abandoned mine downstream of Green Valley's operations and (2) that the significant expansion of the side-hill fill proposed by IBR 6 would not worsen the iron problem. J.A. 241. The court noted that Green Valley and the state agency contested the evidence on these points but found that OVEC had made a sufficiently strong showing to warrant a preliminary injunction. The court concluded that further investigation was necessary to determine whether the proposed project was likely to worsen materially the iron problem in Hominy Creek.

The state agency filed its notice of appeal from the preliminary injunction on July 19, 2000. Several months later, in December 2000,

Green Valley obtained permission from the state agency to withdraw the IBR 6 application. In February 2001 the state agency informed the district court of this development and noted that Green Valley had resubmitted the application as IBR 9. OVEC then moved to dissolve the preliminary injunction as moot. Though the state agency opposed the motion based on the similarities between IBR 6 and IBR 9, it acknowledged that it had not completed a full administrative review of IBR 9 and could not predict the outcome of such review. The district court dissolved the preliminary injunction on April 11, 2001, based on its determination that "[a]lthough similar to the enjoined IBR [6], the newly submitted IBR [9] has not been reviewed by [the state agency]." J.A. 284. Dissolution of the injunction concluded what we refer to as phase one of the litigation.

B.

Later, in October 2001, OVEC filed an administrative complaint, known as a "citizen complaint," with the Charleston, West Virginia, office of the federal Office of Surface Mining (OSM). The citizen complaint alleged that Green Valley's existing Hominy Creek operations were in violation of numerous provisions of SMCRA. A few days after filing the citizen complaint with OSM, OVEC notified Green Valley of its intent to commence a civil action against the company based on the violations identified in the citizen complaint. A year later, in October 2002, phase two of this litigation began when OVEC moved successfully in district court to file supplemental claims against Green Valley.

In the meantime, OVEC's October 2001 citizen complaint prompted OSM to begin a lengthy administrative review process. The most important events in that process, at least for our purposes, occurred in mid-2003. On June 20, 2003, OSM issued a notice of violation based on several seeps containing iron that were draining into Hominy Creek without first passing through a treatment pond. Green Valley thereafter took remedial measures to address these seeps. In response to Green Valley's measures, OSM terminated its notice of violation on September 17, 2003. Based in part on its satisfaction with Green Valley's remedial efforts, OVEC moved on May 3, 2004, to dismiss, without prejudice, its supplemental claims against Green

Valley. The district court granted OVEC's dismissal motion the next day, thus ending phase two of the litigation.

### C.

OVEC petitioned the district court for an award of costs of litigation, including attorney and expert witness fees, under 30 U.S.C. § 1270(d). In a series of rulings the district court held that OVEC was eligible for a fee award based on the preliminary injunction that barred issuance of IBR 6, calculated the amount of a reasonable fee award based on the degree of success OVEC achieved in the two phases of the litigation, and awarded prejudgment interest. For phase one the district court awarded $64,107.50 in fees and $24,360.85 in prejudgment interest. The court determined that OVEC's limited success in phase two warranted reducing its fee award for that phase by half, resulting in an award of $49,573.76 with prejudgment interest of $3,965.90. The court also awarded additional amounts for the attorney fees incurred in preparing the fee petitions and for a few other miscellaneous lawyer expenses. Green Valley appeals the award of fees and prejudgment interest.

### II.

Under what is called the American Rule, a "prevailing litigant is ordinarily not entitled to collect" an award of attorney fees "from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). Congress from time to time departs from this rule by enacting provisions that require or permit a court to order one party to pay the reasonable attorney fees of another. Most fee-shifting provisions allow a court to award fees to a prevailing party. *See Loggerhead Turtle v. County Council*, 307 F.3d 1318, 1322 & n.4 (11th Cir. 2002) (listing "prevailing party" provisions). Less commonly, a fee-shifting provision, such as SMCRA's, authorizes a fee award "to any party, whenever the court determines such award is appropriate." 30 U.S.C. § 1270(d); *see Loggerhead Turtle*, 307 F.3d at 1322 & n.5 (listing "whenever appropriate" provisions). Under a "whenever appropriate" provision a fee award is appropriate only when the fee claimant achieves "some degree of success on the merits." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983). We review de novo the legal determination of whether a party has achieved sufficient suc-

cess to be eligible for a fee award under a "whenever appropriate" provision. *W. Va. Highlands Conservancy v. Norton*, 343 F.3d 239, 246 (4th Cir. 2003). The factual findings underpinning that determination are reviewed for clear error. *Carolina Care Plan, Inc. v. McKenzie*, 467 F.3d 383, 390 (4th Cir. 2006).

### III.

We first consider whether OVEC achieved sufficient success on the merits during phase one of the litigation to warrant an award of attorney fees.

### A.

OVEC advances alternative reasons to support its eligibility for a fee award with respect to phase one. It argues first that the district court was correct in holding that the preliminary injunction, by itself, provided OVEC with sufficient success on the merits to justify the award. OVEC argues in the alternative that it is eligible for an award under the catalyst theory based on Green Valley's withdrawal of the IBR 6 permit application. Because we conclude that the catalyst theory supports a fee award for phase one of this litigation, we do not take up the question of whether obtaining a preliminary injunction might, standing alone, support a fee award under a "whenever appropriate" provision. *Cf. Smyth v. Rivero*, 282 F.3d 268, 276-77 (4th Cir. 2002) (holding that a preliminary injunction was not sufficient to create eligibility for fees under a prevailing party provision).

The catalyst theory holds that "parties who obtain, through settlement or otherwise, substantial relief prior to adjudication on the merits" may be eligible for attorney fees under a "whenever appropriate" provision. *See Sierra Club v. EPA*, 322 F.3d 718, 719 (D.C. Cir. 2003). The theory derives in large part from the Supreme Court's observation in *Ruckelshaus* that Congress intended the "whenever appropriate" standard in the Clean Air Act to allow fee recovery for "suits that force[ ] defendants to abandon illegal conduct, although without a formal court order." 463 U.S. at 686 n.8 (citing S. Rep. No. 91-1196 (1970)). Allowing catalyst theory recovery was, as the Supreme Court noted, a "somewhat expansive innovation" that extended fee eligibility beyond that available under the prevailing

party standard. *Id.* The legislative history demonstrated, however, that Congress clearly intended such a result. *Id.*; *see also Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 67 n.6 (1987) (citing similar legislative history relating to the "whenever appropriate" standard in the Clean Water Act).

Green Valley argues that the catalyst theory is no longer valid after *S-1 & S-2 v. State Board of Education*, 21 F.3d 49 (4th Cir. 1994), and *Buckhannon Board & Care Home v. West Virginia Department of Health & Human Resources*, 532 U.S. 598 (2001). Both *S-1 & S-2* and *Buckhannon* hold that prevailing party fee provisions do not permit recovery based on the catalyst theory. *S-1 & S-2*, 21 F.3d at 51; *Buckhannon*, 532 U.S. at 610. Instead, these provisions require a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon*, 532 U.S. at 605. Green Valley's argument based on cases that interpret prevailing party provisions runs squarely into *Ruckelshaus*, which remains the controlling law on the construction of "whenever appropriate" provisions. As *Ruckelshaus* acknowledges, Congress's adoption of the "whenever appropriate" standard acts as a rejection of the prevailing party standard and its narrower application. 463 U.S. at 687. For this reason, *Buckhannon* and other cases rejecting the catalyst theory under prevailing party provisions do not bar the application of the theory to "whenever appropriate" provisions.

Other circuits agree with us that *Buckhannon* does not bar catalyst recovery under a "whenever appropriate" provision. *See Sierra Club v. EPA*, 322 F.3d 718 (D.C. Cir. 2003) (Clean Air Act); *Loggerhead Turtle v. County Council*, 307 F.3d 1318 (11th Cir. 2002) (Endangered Species Act). These circuits have likewise reasoned that *Ruckelshaus*, which was not even cited in *Buckhannon*, remains the controlling Supreme Court decision with respect to the "whenever appropriate" standard. *Sierra Club*, 322 F.3d at 721-26; *Loggerhead Turtle*, 307 F.3d at 1322-27. In sum, SMCRA's "whenever appropriate" fee-shifting provision authorizes recovery under the catalyst theory.

### B.

We turn now to whether the catalyst theory supports OVEC's fee recovery for phase one of this case. To warrant a catalyst recovery,

OVEC must establish three things: first, that Green Valley's actions provided OVEC with "some of the benefit sought" in the lawsuit; second, that OVEC's claims in the lawsuit were not frivolous; and third, that OVEC's lawsuit was a substantial or significant cause of Green Valley's actions providing relief. *See Sierra Club*, 322 F.3d at 726.

The district court's findings support application of the catalyst theory in this case, although the court did not base the fee award on that theory. The second element of a catalyst recovery is not in dispute. In granting the injunction with respect to IBR 6, the district court necessarily found that OVEC's claims were not frivolous. The third element, causation, is likewise satisfied. The record makes clear that, absent the preliminary injunction obtained by OVEC, the state agency would have approved IBR 6 in its original form, and Green Valley would have had no reason to submit IBR 9 in lieu of IBR 6. Green Valley's withdrawal of IBR 6 was thus caused, at least in significant part, by OVEC's lawsuit.

The issue that requires closest attention is whether Green Valley's withdrawal of IBR 6 provided OVEC "some of the benefit sought" in its lawsuit. The district court concluded that Green Valley's withdrawal of its IBR 6 application and the submission of IBR 9 "achieved one of [OVEC's] primary purposes" because it required the state agency to reconsider the allegedly inadequate CHIA. J.A. 573. Under our precedent this rather modest victory provides OVEC a sufficient benefit to warrant eligibility for a fee award. In *West Virginia Highlands Conservancy v. Norton*, 343 F.3d 239, 246-47 (4th Cir. 2003), we held that a plaintiff was eligible for a SMCRA fee award based on its success in securing a remand requiring OSM to reconsider the claim asserted in the plaintiff's citizen complaint. Likewise, in *National Wildlife Federation v. Hanson*, 859 F.2d 313, 316-17 (4th Cir. 1988), we held that a fee award was appropriate under the Clean Water Act when the plaintiff secured a remand requiring the Army Corps of Engineers to reconsider a previous determination that an area was not wetlands. In both cases we held that a remand requiring the agency to begin its administrative review process anew constituted some success under *Ruckelshaus*, regardless of whether the plaintiff ultimately prevailed on the underlying issue. The same reasoning applies here. As the district court pointed out, the practical effect of Green Valley's withdrawal of IBR 6 and submission of IBR

9 was to restart the administrative review process and require the state agency to reconsider the allegedly deficient permit application. Therefore, we conclude that OVEC, like the plaintiffs in *Norton* and *Hanson*, is eligible for a fee award under the "whenever appropriate" standard. Green Valley, however, argues that satisfying this standard is not dispositive in this case because other factors (considered below) negate fee eligibility.

C.

Green Valley argues that the district court's fee award is inappropriate under *Independent Federation of Flight Attendants v. Zipes*, 491 U.S. 754 (1989), due to the company's status as an intervenor during phase one of the litigation. In *Zipes* the Supreme Court held that an intervenor could be liable for attorney fees under Title VII's prevailing party standard only if its participation in the litigation was "frivolous, unreasonable, or without foundation." 491 U.S. at 761. The Court imposed this stringent standard based on its determination that imposing liability on blameless intervenors would not advance the purposes of Title VII's fee-shifting provision. *Id.* at 761-62. OVEC concedes that Green Valley's actions were not frivolous, unreasonable, or without foundation, but it argues that *Zipes*, which interpreted a prevailing party provision, is not controlling in this case.

We agree with OVEC that *Zipes* does not apply here. To begin with, *Zipes* is distinguishable because it construed Title VII's prevailing party standard rather than the "whenever appropriate" standard used in SMCRA. More important, the Supreme Court's rationale in *Zipes* actually supports the fee award in this case in at least two ways. First, Green Valley is not blameless in the sense that term was used in *Zipes*. The intervening party in *Zipes* was a union representing all of the employees of Trans World Airlines (TWA). After TWA reached a settlement agreement with the Title VII plaintiffs, the union intervened because it claimed the settlement agreement adversely affected the seniority rights of its members. As the Court recognized, the union intervenor was blameless because there was no allegation that it had violated Title VII. 491 U.S. at 762. By contrast, OVEC's initial complaint alleged that Green Valley had violated its duties under SMCRA by submitting permit applications that did not comply with the Act's requirements. Second, *Zipes* instructs that the discre-

tion to award fees is guided by the "large objectives" of the underlying substantive provisions in a statute. 491 U.S. at 759. SMCRA's large objectives do not support imposing the *Zipes* standard as a shield against liability for intervenors in Green Valley's position. To the contrary, the purpose of SMCRA's fee-shifting provision — to ensure compliance with SMCRA's provisions both by the states implementing the regulatory program and the coal operators regulated by the program — would be undercut by a rule that protects operators from fee liability when they intervene to defend allegedly illegal mining permits and practices.

Green Valley also contends that our decision in *Johnson v. City of Aiken*, 278 F.3d 333 (4th Cir. 2002), bars a fee award against an intervening party. This assertion, too, lacks merit. Like *Zipes*, *Johnson* is distinguishable because it construes a prevailing party provision, and it lacks persuasive force in the context of this case. In *Johnson* we reversed the district court's decision to award fees against a police officer who had not been a party to the only claim, a pendent state law assault claim, on which the plaintiffs had won more than nominal damages. We held that the officer's "status as a nonparty on the state law assault claim protects him from [fee] liability [under § 1988] arising from that claim." 278 F.3d at 338. Here, Green Valley was an intervenor with respect to the claim in question, not a nonparty like the officer in *Johnson*. Moreover, in *Johnson* we emphasized the "crucial connection between liability for violation of federal law and liability for attorney's fees under federal fee-shifting statutes." *Id.* (quoting *Zipes*, 491 U.S. at 762). In this case Green Valley's submission of allegedly illegal mining permit applications provides the necessary connection between the substantive provisions of SMCRA and fee liability.

D.

Green Valley also argues that the district court's fee award is inappropriate because of our decision in *Bragg v. West Virginia Coal Association*, 248 F.3d 275 (4th Cir. 2001). In *Bragg* we held that Eleventh Amendment immunity bars a SMCRA suit in federal court that seeks an injunction against a state official to enforce the provisions of a state's (federally approved) SMCRA regulatory program. Green Valley casts its *Bragg* argument in terms of subject matter

jurisdiction, yet it does not dispute the district court's jurisdiction at the time the order awarding attorney fees was entered. Thus, the heart of Green Valley's argument appears to be that the district court should not have awarded attorney fees because *Bragg*, which was decided shortly after the district court dissolved the preliminary injunction, demonstrates that the injunction would have been reversed on appeal. This argument fails because Green Valley's actions mooted the injunction while the state agency's appeal was pending and before the *Bragg* decision was issued. And nothing in *Bragg* negated OVEC's success in both blocking the issuance of IBR 6 and requiring the state agency to restart the administrative process with respect to Green Valley's IBR 9 application.

## E.

In sum, we hold that the district court's fee award to OVEC for its work on phase one of the litigation is appropriate under the catalyst theory, and that Green Valley's arguments attacking that portion of the award are without merit.

## IV.

We turn now to whether OVEC may recover its fees for phase two of the litigation. Phase two began when the district court allowed OVEC to file supplemental claims against Green Valley alleging that the company was violating SMCRA at its Hominy Creek operations. In calculating OVEC's phase two award, the district court included not only time OVEC's lawyers spent pursuing the supplemental claims in this case but also time spent on related administrative efforts. For the reasons that follow, we hold that the district court erred by awarding fees for time spent on the related administrative efforts. On remand the district court may award fees for OVEC's phase two litigation efforts — but not for efforts in administrative proceedings — if the court determines (applying catalyst theory requirements) that OVEC's phase two litigation was a significant or substantial cause of Green Valley's decision to take remedial action at its Hominy Creek mining site.

## A.

OVEC contends that the portion of the fee award attributable to time spent on phase two may be affirmed based on the success

achieved during phase one. We disagree. In *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983), the Supreme Court held that "where the plaintiff achieve[s] only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." The *Hensley* rule suggests that in the circumstance before us — involving a lawsuit with distinct phases and claims — a plaintiff is entitled to recover fees only with respect to any phase that is successful. For this reason, OVEC may recover a fee award for its efforts during phase two of this case only if it achieved some degree of success (as measured by the catalyst theory) during that phase.

B.

We also disagree with OVEC's contention that the district court properly included time spent in the administrative arena as part of the phase two fee award. (The fee award for OVEC's efforts in administrative proceedings appears to include time spent in preparing the citizen complaint and in advancing OVEC's position in the agency investigation triggered by the complaint.) The inclusion of the time spent in administrative proceedings is inconsistent with the text of § 1270(d), the provision that allows for fee awards in citizen suits brought under SMCRA. Section 1270(d) provides that a court "in issuing any final order in any action brought" to compel compliance with SMCRA "may award *costs of litigation* (including attorney and expert witness fees) to any party . . . ." 30 U.S.C. § 1270(d) (emphasis added). The phrase "costs of litigation" refers to costs of litigating a citizen suit, and not to costs of pursuing separate administrative remedies.*

OVEC points out that in an environmental compliance case, *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546 (1986), the Supreme Court allowed fee recovery for time spent in related administrative proceedings. The case before us today is not like *Delaware Valley*, however. The type of fee recovery permitted in *Delaware Valley* is limited to circumstances in which the "administrative proceedings are intimately tied to the resolution of the judicial action

---

*Another fee-shifting provision in SMCRA, 30 U.S.C. § 1275(e), allows for the recovery of fees in administrative proceedings. OVEC's fee petition did not seek fees under § 1275(e).

and necessary to the attainment of the results Congress sought to promote by providing for fees." *Sullivan v. Hudson*, 490 U.S. 877, 888 (1989). In *Delaware Valley* the plaintiff's "participation in [state] administrative proceedings was crucial to the vindication of [the plaintiff's] rights" under a court-ordered consent decree in a Clean Air Act case. 478 U.S. at 561. The Supreme Court thus upheld a fee award that included time spent by plaintiff's counsel in pursuing "measures [in the administrative arena that were] necessary to enforce the remedy ordered by the District Court." 478 U.S. at 559. Here, OVEC's dual-track strategy of pursuing both judicial and administrative relief might have been wise, but the pursuit of administrative remedies was not necessary to the attainment of relief in its citizen suit under SMCRA. Its citizen complaint and subsequent work in the administrative arena simply provided OVEC a separate, alternative route to the goals it was pursuing in the litigation. Therefore, nothing in *Delaware Valley* alters our conclusion that OVEC is not entitled in this case to a fee award under § 1270(d) for efforts in the administrative proceedings.

## C.

OVEC argues that its phase two fee award may be upheld under the catalyst theory because its dual-track efforts — filing both an administrative complaint and supplemental claims in phase two of this litigation — caused Green Valley to take remedial action. As OVEC points out, the district court found that OVEC's "litigation and administrative complaints forced [the state agency], OSM and [Green Valley] to assemble more data on the iron found in Hominy Creek, to determine [the iron's] sources and to modify the permits and plan of operation to control those sources." J.A. 810. Moreover, the district found that "[a]s a result of [OVEC's] dual track approach," Green Valley "negotiated a resolution of the regulatory actions by revising its permit and operations to address some, even if not most, of the iron flowing from its permit areas into Hominy Creek." J.A. 810. These actions, the district court concluded, advanced OVEC's "primary goal," which was "to hold [Green Valley] accountable for the iron pollution of Hominy Creek in the vicinity of [Green Valley's] operations." J.A. 810.

These findings are not sufficient to support a catalyst theory award under § 1270(d). Application of that theory requires a finding that

OVEC's phase two litigation was a significant or substantial cause of Green Valley's decision to undertake remedial efforts. *See Sierra Club*, 322 F.3d at 726. The district court's findings do not meet this standard because they address only the combined effect of OVEC's administrative and phase two litigation efforts. We therefore vacate that part of the fee award that relates to phase two of the litigation and the administrative proceedings. On remand the district court may award OVEC its fees for phase two of the litigation — but not fees for its administrative efforts — if the court determines that litigation of the supplemental claims in this case had a significant or substantial effect on Green Valley's decision to take remedial action.

V.

We turn finally to the propriety of the district court's award of prejudgment interest. In awarding attorney fees, a district court is required to account for "the effect of delay in payment on the value of the fee." *Daly v. Hill*, 790 F.2d 1071, 1081 (4th Cir. 1986). The delay factor may be accounted for either by using a fee rate based on the current market or by using the historical fee rate with reasonable interest added. *Johannssen v. Dist. No. 1 - Pac. Coast Dist., MEBA Pension Plan*, 292 F.3d 159, 180 (4th Cir. 2002). The district court stated that its fee award was based on historical fee rates and that an award of prejudgment interest was therefore the appropriate method of accounting for the delay in payment.

Green Valley argues that an award of prejudgment interest is not permissible in this case. Green Valley says that awarding prejudgment interest would result in an improper windfall to OVEC because at least two of OVEC's lawyers charged the same rate at the time of the award as they did when the work was performed. This argument fails under controlling law. The thrust of *Daly* and *Johannssen*, cited above, is that a fee award must account for the effect of delay in payment. When a lawyer's rates are unchanged throughout the relevant time period, that is, when the current fee rate is the same as the historical rate, a fee award based on the current rate does not account for the delay in payment at all. In these circumstances, the only proper course is to account for the delay in payment by awarding prejudgment interest. Thus, the district court's decision to award prejudgment interest was proper.

The district court did, however, err in one respect in calculating the award of prejudgment interest. OVEC's filings indicate that one of its lawyers, Ted Korth, charged an hourly rate of $150 prior to May 1, 2001, and $175 per hour thereafter. Although all work relating to the preliminary injunction phase of the litigation was completed prior to April 13, 2001, the district court calculated the fee award based on Korth's $175 rate. Using the higher rate to calculate the fee award while also awarding prejudgment interest is inappropriate under *Daly* and *Johannssen*. For this reason, we vacate the district court's award of prejudgment interest and remand for the court to recalculate the interest and issue a corrected award.

## VI.

For the foregoing reasons, we affirm the district court's fee award with respect to the portion attributable to time spent on phase one of the litigation. We vacate the award with respect to phase two with instructions that the district court reconsider on remand whether to award OVEC the fees incurred in pursuing its supplemental claims in this litigation without taking into account the related administrative proceedings. Finally, we affirm the district court's decision to award prejudgment interest, but we vacate the interest award and remand for the district court to recalculate the interest due on the fees of one of OVEC's lawyers.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*