**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 11-1399**

_____

REACHING HEARTS INTERNATIONAL, INCORPORATED,

Plaintiff – Appellee,

v.

PRINCE GEORGE'S COUNTY; COUNTY COUNCIL OF PRINCE GEORGE'S
COUNTY, Sitting As The District Council,

Defendants – Appellants.

_____

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Roger W. Titus, District Judge.
(8:05-cv-01688-RWT)

_____

Argued: March 21, 2012            Decided: April 25, 2012

_____

Before MOTZ, SHEDD, and AGEE, Circuit Judges.

_____

Affirmed and remanded by unpublished per curiam opinion.

_____

**ARGUED**: William Walter Wilkins, NEXSEN PRUET, LLC, Greenville,
South Carolina, for Appellants. Ward Baldwin Coe, III,
GALLAGHER EVELIUS & JONES, LLP, Baltimore, Maryland, for
Appellee. **ON BRIEF**: Tonia Y. Belton-Gofreed, OFFICE OF LAW,
Upper Marlboro, Maryland; Kirsten E. Small, NEXSEN PRUET, LLC,
Greenville, South Carolina, for Appellants. David W. Kinkopf,
Brian T. Tucker, GALLAGHER EVELIUS & JONES, LLP, Baltimore,
Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This is the second time this case has been before us. In the first appeal, we affirmed a jury verdict in favor of Reaching Hearts International ("RHI"), a Seventh Day Adventist congregation that sought to build a church on its land in Prince George's County, Maryland.[1] In this appeal, Prince George's County and its County Council (collectively "the County") raise a number of challenges to the district court's award of attorneys' fees and expenses to RHI. For the reasons discussed below, we affirm the order of the district court.

I.

After the appeal by the County had concluded and our mandate issued, RHI filed a motion for attorneys' fees and expenses on July 30, 2010.[2] The motion, supported by a memorandum, affidavit, and verified exhibits, sought almost $725,000 in fees (including fees for attorneys and other non-

---

[1] The jury awarded $3,714,822.36, based on the County's violation of RHI's rights under the Equal Protection Clause and Religious Land Use and Institutionalized Persons Act ("RLUIPA"). For a fuller description of the case and its facts, see Reaching Hearts Int'l, Inc. v. Prince George's County, 368 F. App'x 370 (4th Cir. 2010) (unpublished).

[2] Although RHI had filed a motion for attorneys' fees and expenses after trial, the July 30, 2010 motion was a renewed motion that incorporated a request for additional fees for work associated with the first appeal.

attorney timekeepers), based on 2,635 hours of work through the date it was filed. RHI also sought approximately $40,000 in expenses. The rates used in the motion were the historical hourly rates customarily charged to other clients by the various timekeepers at the time that the services were rendered.[3] The rates for the attorneys ranged from $200 to $470 per hour.

The historical rates requested in the motion for fees were different (and generally higher) than the rates RHI had previously negotiated to pay its attorneys. Specifically, at the outset of the litigation, RHI and its attorneys had agreed that RHI would make payments as the litigation progressed pursuant to a blended, discounted fee structure, with an hourly rate of $250 for all attorneys and $130 for all paralegals. This "reduced" rate was agreed upon "out of consideration of [RHI's] ability to pay and its charitable mission, with the express understanding that [RHI's attorneys] would seek full and proper compensation for fees and expenses from the County should RHI prevail." (J.A. 206.) At the time of RHI's renewed fee petition, RHI had previously paid to its attorneys $560,975.16, although RHI's payments were "often [made] in a less than timely fashion

---

[3] Many of those rates increased during the course of the litigation, which began with the filing of the Complaint in June 2005.

because of [RHI's] limited resources." (Br. of Appellees at 8 (citing Affidavit of Ward B. Coe, III, at J.A. 206).)

At a hearing on the motion for fees and expenses held on March 14, 2011, the district court heard argument from counsel and then determined the lodestar amount, or the "reasonable hourly rate multiplied by hours reasonably expended." United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 356 (4th Cir. 2009). In doing so, the court expressly considered the twelve factors pertinent to the lodestar analysis:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

See Jadhav, 555 F.3d at 356-57 (citations omitted); see J.A. 182-191.

As part of its analysis of these various factors, the district court recognized that this was the first RLUIPA case in the country where money damages had been awarded by a jury. As

4

described by the district court, this "was a very novel case with extremely difficult questions raised." (J.A. 185.) It was "a needle in the haystack case" that "required a lot of skill on the part of the plaintiff's lawyers, not just because of the novelty and difficulty . . . but because of the extremely tenacious defense raised by Prince George's County in defending this case." (J.A. 185, 188.) As to the "most critical factor[,] . . . the degree of success obtained," see Hensley v. Eckerhart, 461 U.S. 424, 436 (1983), the district court stated that this case "can only be described as a home run in a very adverse ballpark with your adversary being the New York Yankees, this was not an easy case." (J.A. 190-91.)

The district court ultimately concluded that the hours set forth in the fee petition were reasonably expended and that the rates sought were reasonable. Indeed, at different points in the hearing, the district court referred to the rates sought as "very reasonable," "extremely reasonable," and "very fair and reasonable," and further concluded that it was "more than satisfied that the rates being sought are those predominantly charged by attorneys practicing in this court." (J.A. 188, 193, 199.)

The district court also considered RHI's request for an enhancement for superior results, but concluded that under the

5

Supreme Court's decision in Perdue v. Kenny A., 130 S. Ct. 1662 (2010), a fee enhancement would not be awarded.

RHI had also asked for additional compensation, over and above the historical rates charged. This additional amount was to account for the "effect of delay in payment on the value of the fee," an adjustment we have explained is required in order to render the fee award "fully compensatory." Daly v. Hill, 790 F.2d 1071, 1081 (4th Cir. 1986); see Ohio River Valley Envtl. Coal., Inc. v. Green Valley Coal Co., 511 F.3d 407, 419 (4th Cir. 2007) (hereinafter "Ohio River") ("a fee award must account for the effect of delay in payment"). The district court concluded that use of RHI's otherwise reasonable historical rates failed to fully compensate it for the lost time value of money. Although the district court recognized that it could calculate interest on each monthly fee paid by RHI and owed to RHI's attorneys, the court stated that it "would almost be a death defying mathematical calculation." (J.A. 194.) Thus, the district court instead accounted for the lost time value of money by applying the current hourly billing rates of the timekeepers (as opposed to the historical rates) to the number of hours awarded. This resulted in a total fee award, including time spent at the district court fee hearing and recalculating the fees using current rates, of $838,722.00. (J.A. 196, 202.)

Finally, the district court awarded the full amount of expenses sought by RHI, finding them to be "very reasonable" and "well documented." (J.A. 193.) The award ultimately included expenses in the total amount of $40,784.40.[4] (J.A. 202.)

The County timely appealed and we have jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review "[t]he reasonableness of the amount of a district court's fee award . . . for abuse of discretion," and questions of law arising in the course of the determination de novo. Johannssen v. Dist. No. 1-Pac. Coast Dist., MEBA Pension Plan, 292 F.3d 159, 178 (4th Cir. 2002), abrogated on other grounds by Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008); Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009) (court reviews award of attorneys' fees and expenses for an abuse of discretion). While that discretion is "not unlimited" and "[i]t is essential that the judge provide a reasonably specific explanation for all aspects of a fee

---

[4] The Clerk of the District Court had previously awarded costs in the amount of $7,348.23 based on a bill of costs RHI submitted shortly after trial. To avoid duplication when entering its award of expenses upon RHI's renewed motion, the district court deducted that amount from the total amount of expenses awarded ($40,784.40), resulting in an order awarding $33,400.17. (J.A. 196, 202, 554.)

7

determination," Perdue, 130 S. Ct. at 1676, our review is nonetheless "sharply circumscribed." Jadhav, 555 F.3d at 356 (citation omitted). "[B]ecause a district court has close and intimate knowledge of the efforts expended and the value of services rendered, the fee award must not be overturned unless it is clearly wrong." Id. (citation omitted).

On appeal, the County challenges various aspects of the district court's determination of the fee award. The County's arguments fall into three categories: (1) challenges to the hourly rates used in calculating the fee; (2) challenges to the number of hours deemed by the district court to be reasonable; and (3) challenges to specific items of expenses as improperly documented. We address each argument in turn.

A.

The County's challenge to the hourly rate used by the district court is two-fold. First, it contends that the hourly rates sought by RHI, i.e., the historical billing rates, were far above the prevailing market rate for civil rights litigation in the District of Maryland, and that there was insufficient support in the record for the rates utilized by the district court. Second, it challenges the district court's use of current market rates to account for a delay in payment.

As to the first part of its challenge to rates, the County argues that the rates charged by the attorneys and paralegals to private clients are not the prevailing market rate for the type of work involved here and that a better indicator of a "reasonable rate" would be either the amount RHI agreed to pay its attorneys (the blended hourly rate of $250 for attorneys and $130 for paralegals) or the rates set forth in Appendix B to the Local Rules for the United States District Court for the District of Maryland, entitled "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases."[5]

As noted, our review is limited to a determination of whether the district court abused its discretion, and we find no abuse of discretion in its determination that the rates sought were reasonable. The court expressly considered, and relied upon, affidavits from Messrs. Rosenberg and Maloney, experienced trial attorneys who were known to the district judge and who

---

[5] The rates in Appendix B vary depending on the number of years since an attorney has been admitted to the bar. For example, the suggested range of hourly rates for a lawyer admitted to the bar for less than five years is $150-190. For a lawyer admitted for fifteen years or more, the rate would be $275-$400. The section of Appendix B setting forth the rates also makes clear that "[t]he factors established by case law obviously govern over [these rates]" and that "[o]ne factor that might support an adjustment to the applicable range is an increase in the cost of legal services since the adoption of the guidelines." Id. at n.6. According to counsel's representations to this Court, the rates were last updated in January 2008.

both appeared regularly in federal court in Maryland in complex civil litigation matters and other cases. Those affidavits stated that the rates sought were reasonable.[6] The district judge also relied on his own knowledge of prevailing market rates in the relevant market. In particular, he explained that he had been responsible for billing at the law firm where he practiced prior to his appointment to the bench in 2003 and that he knew the rates charged by attorneys at that local firm for all types

---

[6] The County emphasized, both in its brief and at argument, that the affidavits were insufficient to establish that the rates sought were reasonable because they did not contain "satisfactory 'specific evidence of the prevailing market rates in the relevant community' for the type of work performed." (Br. at 11-12 (quoting Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)) (citation omitted).) In particular, it contends the affidavits of Messrs. Rosenberg and Maloney were insufficient because they did not state that the claimed rates were consistent with the market rate for the specific type of litigation involved, here, "civil rights litigation." (Br. at 12-14.) We disagree.

While the affidavits may not have used the precise language suggested in Plyler and while they could have been more specific, there are significant distinctions between "civil rights cases" in general (such as Section 1983 cases brought by prisoners or against the police by arrestees) and a RLUIPA case like this one, which was much more involved and complicated than a typical "civil rights" case and more akin to complex civil litigation. As noted, there was significant novelty to this litigation because so few cases under RLUIPA for money damages in this context had occurred at that time. Thus, we conclude the district court did not abuse its discretion in determining that the affidavits were sufficient to show that the rates were reasonable for the type of work performed.

of litigation up through that time in the relevant market.[7] Additionally—and significantly—there was a lack of comparable rates for RLUIPA work in Maryland and even nationwide, in view of its novelty at the time, and the fact that no jury award of damages had ever been made prior to this case. (J.A. 172, 184-85 (district court noting "this was a very novel case with extremely difficult questions raised" and that there is not a RLUIPA bar that the court could look to in order to determine rates).) In short, we find no error or abuse of discretion in the district court's determination that the historical rates requested were reasonable.

The County's second challenge to the rates used by the district court is that the use of March 2011 hourly rates, rather than historical rates, constituted an improper enhancement and was not warranted by any delay in payment. The County relies heavily on the fact that RHI paid its attorneys the agreed-upon reduced rate throughout the litigation, and thus there was no delay in payment to the attorneys as to most of the

---

[7] In fact, the district court noted that the historical fees now requested were less than what he would have termed comparable rates when he left private practice seven years earlier. (J.A. 187 ("Mr. Coe's rates now are less than my rate was [when I arrived on the bench]"); id. at 199 ("all these rates are very reasonable. Very reasonable. I mean, my rate was north of these rates seven years ago. And rates at my old law firm have been going up since then, not down.").)

11

fees earned. This second challenge to the rates is a slightly more involved issue.

As an initial matter, we first note that the use of the current rates was not an "enhancement" of the fee award of the type discussed in the Supreme Court's opinion in Perdue. While the district judge clearly indicated he would have liked to apply a Perdue-type enhancement, he expressly stated that he was not doing so, but was simply awarding the time value of money, or using current rates to account for a delay in payment. (J.A. 197 (district judge expressing that "in [his] heart of hearts" he believed an enhancement was probably appropriate in this case, but "applying current hourly rates to the recovery of fees in this case is fully justified by the time value of money").)[8] Accordingly, we address whether using current rates to account for either a delay in payment or the lost time value of money was an abuse of discretion.

---

[8] The County complains that the district court's ruling was simply a way to enhance the award without calling it an enhancement. In part, it relies on the district court's alternative statement that "to the extent that [applying current rates is] too generous, which I doubt it is, that this does represent in my judgment a case of superior – I mean really superior attorney performance." (J.A. 197.) The record is clear that the district court did not apply an enhancement, as that term is utilized by Perdue, since the district court expressly disavowed that it was doing so. See id. Since we affirm the use of current rates as justified by the delay in payment, we do not have occasion to consider whether a Perdue-type enhancement would be appropriate in this case.

12

Our precedent is clear that, in the typical case, an appropriate way to compensate for a delay in payment for attorneys' fees is either to use the current hourly rates instead of historical ones, or to include an award of interest to account for the lost time value of money. As the Supreme Court explained in Missouri v. Jenkins:

> Our cases have repeatedly stressed that attorney's fees awarded under [42 U.S.C. § 1988] are to be based on market rates for the services rendered. . . . Clearly, compensation received several years after the services were rendered – as it frequently is in complex civil rights litigation - is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment – whether by the application of current rather than historic hourly rates or otherwise – is within the contemplation of the statute. . . . An adjustment for delay in payment is, we hold, an appropriate factor in the determination of what constitutes a reasonable attorney's fee under § 1988.

491 U.S. 274, 283-84 (1989) (internal footnote and citations omitted).

This Court, too, has repeatedly noted that a court may base a reasonable rate for lodestar purposes on current rates to compensate for a delay in payment. See Ohio River, 511 F.3d at 419-20; Johannssen 292 F.3d at 181; Daly, 790 F.2d at 1081. In Johannssen, for example, we concluded that the district court

13

had abused its discretion in adopting historic rates without considering the effect of delay of payment on the value of the fee. As we explained in Johannssen, "consideration of the effect of time on the value of the fee is mandatory as part of a consideration of what is reasonably compensatory." Id. at 180.

Thus, it is clear that in an appropriate case, the use of current rates is permissible, and that using either current rates or some appropriate rate of interest is required to account for such a delay. The use of current rates, to be sure, can be an imprecise substitute for some other form of mathematical precision, and interest rates may often be a more accurate way to calculate the lost time value of money. But as explained above, our precedent allows that imprecise methodology.

The case at bar, however, has a wrinkle that potentially complicates the application of this general practice to account for a delay in payment. That wrinkle is that RHI made substantial, but not always timely, ongoing payments to its attorneys during the litigation. Indeed, approximately $560,000 of the initial $765,000 in fees and expenses sought by RHI had already been paid to its attorneys. Thus, the question could be

raised as to whether the fact that a significant partial payment had been made to the attorneys here affects the analysis.[9]

It is certainly a feasible argument that, in a case where such a partial payment has been made, the two portions of the fee award (representing the paid and unpaid amounts) could be subject to different analyses when adjusting to account for a delay in payment. One portion would be the loss to RHI itself of what could be characterized as the traditional concept of the time value of money, representing the amounts it paid to its attorneys throughout the litigation. Had RHI not had to make these payments, it could have earned interest on those funds. The second portion is the loss suffered by the attorneys from a delay in payment, but is applicable only to those amounts equal to the historical rates (as determined by the district court to be reasonable) less the amounts paid by RHI using the reduced blended rates.

---

[9] The fact of partial payment certainly affects who, as between the plaintiff (RHI) and its attorneys, should receive what portion of the adjustment to current rates. As RHI's counsel acknowledged at oral argument, RHI should receive all amounts it had previously paid to its attorneys, as well as an additional amount representing the portion of the adjustment equal to the percentage of the unadjusted total award that the previously-paid amount comprises. Indeed, since the bulk of the fees were paid by RHI, it was RHI, not the attorneys, who lost most of the time value of its money.

15

At argument before this Court, counsel for RHI was asked whether any of the three principal cases RHI relied upon to support the district court's use of current rates involved a partial payment to attorneys. RHI's attorney responded that they did not involve partial payments.[10] In fact, however, at least one of those—Johannssen—appeared to have involved a partial payment, although this Court did not address the significance of that fact.[11]

In Johannssen, we reversed a district court's fee award because it failed to either use current hourly rates or award interest in order to account for a delay in payment. It appears that Johannssen actually involved some amount of partial payment to the plaintiffs' attorneys during the litigation. In a footnote, this Court explained:

> The district court also noted that Plaintiffs' attorneys had agreed to a retainer agreement with them that was to provide them with a portion of the fees necessary to prosecute the case. The court did not explain how this was relevant to the issue of delay other than the somewhat mysterious statement that "it was not

---

[10] Oral Argument Digital Recording at 31:02 (March 21, 2012).

[11] The other two cases are Daly and Ohio River. In Daly, there was a contingency fee agreement in the underlying suit and no partial payments made. 790 F.2d at 1074-75 (describing 25% contingency fee agreement). In Ohio River, the opinion is silent as to any type of payment arrangement between the client and its attorneys. See generally 511 F.3d 407.

16

> insignificant that the clients agreed to support the litigation to the extent that they did."

Id. at 180 n.20.

We did not explain in Johannssen the significance of this fact, if any, or how it could impact the district court's calculation of any adjustment for delay in payment. Nonetheless, despite the knowledge that there was at least an agreement by the clients to make some payments during the litigation—and possibly payments were made—we held that an adjustment was warranted for a delay in payment, and did not differentiate the calculation of that adjustment into segregated amounts representing funds already paid by the client and amounts unpaid. This could suggest, although it is by no means clear, that no different calculation is required, even in cases where there is a partial payment to the lawyers during the litigation. The parties have not pointed to any Fourth Circuit cases or out-of-circuit cases addressing whether a different calculation is required or warranted for the two possible portions of the fee award where there has been a partial payment by the client.

Resolution of this question is not required in the case at bar, however, because the issue was not squarely raised before the district court. At the fee petition hearing, in the context of arguing that no enhancement should be applied, attorneys for the County argued that there was no delay in payment because the

17

client had paid the largest portion of the fees sought to the attorneys. (J.A. 178 (counsel for the County arguing "there wasn't a big delay in payment . . . [as to] what was paid to Mr. Coe by Reaching Hearts. In other words, they were paid fees by their client all along.").) Thus, the district court clearly knew that some payments had been made. See id.[12] However, the issue of whether the portion of the fees representing payments made by the client should be treated differently than payment for the portion representing amounts not paid to RHI's attorneys was never squarely presented to the district court and it was not asked to rule on the fee award on that basis. Unsurprisingly, then, the district court did not address this point.[13]

---

[12] In his affidavit, Ward Coe, the lead counsel for RHI, explained: "Both RHI – for the money it already has forwarded for attorneys' fees and costs – and RHI's attorneys – for the difference between what they have received for services rendered versus the actual cost of those services—have unfairly lost the time value of money. The representation of RHI in this matter also carried with it the risk that full payment for services may not come at all or, at best, would only come many years later or at a reduced amount." (J.A. 215 at ¶ 23.) See J.A. 167 (Mr. Coe's statement at the fee hearing that the use of current rates or an "interest calculation" would "compensate[] for both Reaching Hearts' outlay of fees and not getting them back for a long time, and also the delay in payment to attorneys where we're both delayed in compensation because we're working for a client who has to pay us to play.").

[13] The district court recognized that there were separate delays, at least to some extent, explaining that he would use current rates to "take into account the time value of money in
(Continued)

18

Similarly, the County did not argue this specific point on appeal. Instead, it was raised by the panel at oral argument and the parties merely responded to the questioning by the panel. Regardless of whether the County's failure constitutes a waiver of the issue, we cannot say that the district court abused its discretion in this case in failing to treat the two amounts differently, where that possibility was never presented to it. Accordingly, we find no abuse of discretion in the court's use of current hourly rates to account for a delay in payment.

B.

We have carefully considered the County's remaining challenges to the fee award. These include allegations that the district court failed to carefully scrutinize the fees and expenses sought and consequently awarded fees that were the result of overstaffing, excessive hours for certain tasks, or hours associated with RHI's lead counsel changing law firms during the litigation. As to each of these challenges, we conclude that the district court acted within its discretion in

---

the sense that the fee was not received by either the law firm – by the law firm in part for a considerable period of time and, of course, the fact that the plaintiff had to lay this money out from day one all the way to the present time, to the extent that it paid money." (J.A. 194.) But the court did not consider whether those separate items should be analyzed differently nor did the County make that request.

19

reaching its determination that the number of hours and the time entries were adequately documented and were reasonable.

To be sure, the approved number of hours expended here (and indeed, the fee award itself) was quite large. But this was a hard-fought case, one that was vigorously litigated by the County. The County raised a large number of defenses, filed motions to dismiss on various grounds, fought discovery, came to two settlement conferences without authority to settle, and raised numerous assignments of error in its first appeal to this Court. It is irrelevant whether, had we been reviewing the fee petition in the first instance, we might have reduced some of the hours on the grounds urged by the County, or found that some hours were potentially the result of duplicative efforts. Daly, 790 F.2d at 1079 ("[W]e are not entitled to disturb a district court's exercise of discretion even though we might have exercised that discretion quite differently.") We review the district court's decision as to the hours expended only for an abuse of discretion, and we find nothing "clearly wrong" about its decision as to the hours reasonably expended here. See Jadhav, 555 F.3d at 356.

Similarly, as to the County's claim that certain expenses (in-house photocopying and legal research) were inadequately documented or otherwise unreasonable, we find no abuse of discretion in the district court's ruling.

20

III.

As both parties acknowledge, RHI will also be entitled to its reasonable attorneys' fees and expenses for its successful efforts in this appeal. Plyler, 902 F.2d at 281-82. Accordingly, we remand this case to the district court for a determination of reasonable attorneys' fees and expenses related to this appeal. See id.

IV.

For the foregoing reasons, the order of the district is affirmed, and we remand to the district court for a further fee determination.

AFFIRMED AND REMANDED