**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA ex rel.
LOKESH VUYYURU,
                    *Plaintiff-Appellant,*

                v.

GOPINATH JADHAV, M.D.;
SOUTHSIDE GASTROENTEROLOGY
ASSOCIATES, LIMITED; COLUMBIA /
HCA JOHN RANDOLPH,
INCORPORATED; PETERSBURG
HOSPITAL COMPANY, LLC;
CAMERON FOUNDATION, a Virginia
non-profit corporation,
                    *Defendants-Appellees,*

                and                              No. 07-1455

SEALED DEFENDANT 1; SEALED
DEFENDANT 2; SEALED DEFENDANT
3; SEALED DEFENDANT 4; SEALED
DEFENDANT 5; COMMUNITY HEALTH
SYSTEMS PROFESSIONAL SERVICES,
INCORPORATED; PETERSBURG
HOSPITAL, INCORPORATED,
                    *Defendants,*

                v.

SEALED MOVANT; UNITED STATES OF
AMERICA; JOHN REYNOLDS, Doctor,
                    *Movants.*

UNITED STATES OF AMERICA ex rel.
LOKESH VUYYURU,
                    *Plaintiff-Appellant,*

                    v.

GOPINATH JADHAV, M.D.;
SOUTHSIDE GASTROENTEROLOGY
ASSOCIATES, LIMITED;
COLUMBIA/HCA JOHN RANDOLPH,
INCORPORATED; PETERSBURG
HOSPITAL COMPANY, LLC; CAMERON
FOUNDATION, a Virginia non-profit
corporation,
                    *Defendants-Appellees,*

                    and                        No. 07-1922

SEALED DEFENDANT 1; SEALED
DEFENDANT 2; SEALED DEFENDANT
3; SEALED DEFENDANT 4; SEALED
DEFENDANT 5; COMMUNITY HEALTH
SYSTEMS PROFESSIONAL SERVICES,
INCORPORATED; PETERSBURG
HOSPITAL, INCORPORATED,
                    *Defendants,*

                    v.

SEALED MOVANT; UNITED STATES OF
AMERICA; JOHN REYNOLDS, Doctor,
                    *Movants.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, Senior District Judge.
(3:06-cv-00180-RLW)

Argued: October 27, 2008

Decided: February 12, 2009

Before KING, Circuit Judge, HAMILTON, Senior Circuit Judge, and Martin K. REIDINGER, United States District Judge for the Western District of North Carolina, sitting by designation.

---

Affirmed by published opinion. Senior Judge Hamilton wrote the opinion, in which Judge King joined. Judge Reidinger wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** David J. Chizewer, GOLDBERG, KOHN, BELL, BLACK, ROSENBLOOM & MORITZ, LTD, Chicago, Illinois, for Appellant. John William Boland, MCGUIRE-WOODS, L.L.P., Richmond, Virginia; Michael Randolph Shebelskie, HUNTON & WILLIAMS, Richmond, Virginia, for Appellees. **ON BRIEF:** Thomas H. Roberts, THOMAS H. ROBERTS & ASSOCIATES, P.C., Richmond, Virginia, for Appellant. Martin A. Donlan, Jr., W. Benjamin Pace, WILLIAMS MULLEN, Richmond, Virginia, for Appellees Gopinath Jadhav, M.D., and Southside Gastroenterology Associates, Limited; Rita Davis, HUNTON & WILLIAMS, Richmond, Virginia, for Appellees Petersburg Hospital Company, L.L.C., and Cameron Foundation; Jeremy S. Byrum, Nathan A. Kottkamp, MCGUIREWOODS, L.L.P., Richmond, Virginia, for Appellee Columbia/HCA John Randolph, Incorporated.

---

## OPINION

HAMILTON, Senior Circuit Judge:

Relator Lokesh B. Vuyyuru (Relator Vuyyuru) appeals the district court's dismissal of, for lack of subject matter jurisdiction, his Third Amended Complaint, which complaint alleges various claims under the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733, and Virginia state law. He also challenges the district court's award of attorneys' fees and costs to one of the defendants. We affirm.

I.

On March 13, 2006, Relator Vuyyuru filed this *qui tam* action under the FCA. After amending the complaint three times, Relator Vuyyuru ultimately named Gopinath Jadhav, M.D. (Dr. Jadhav), Southside Gastroenterology Associates, Ltd. (the SGA Practice), Petersburg Hospital Company, L.L.C., The Cameron Foundation, and Columbia/HCA John Randolph, Inc. as defendants (collectively Defendants).[1]

Of relevance in the present appeal, in his Third Amended Complaint, Relator Vuyyuru alleged three separate counts under the FCA. In the first count, Relator Vuyyuru alleged Defendants "knowingly presented, or caused to be presented and filed, a false or fraudulent claim for payment or approval with the United States Government," in violation of 31 U.S.C. § 3729(a)(1). (J.A. 139). In the second count, Relator Vuyyuru alleged Defendants "knowingly made [or] used or caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Government," in violation of 31 U.S.C. § 3729(a)(2). (J.A. 139). In

---

[1]The United States of America (the government) timely notified the district court that it declined to intervene as a plaintiff, thus leaving Relator Vuyyuru to proceed in the action as the sole plaintiff. *See* 31 U.S.C. § 3730(b)(4)(B).

the third count, Relator Vuyyuru alleged that Defendants "conspired to defraud the United States government in violation of 31 U.S.C. § 3729(a)(3) by getting false or fraudulent claims allowed or paid to the damage of the United States' government." (J.A. 140). With respect to these three counts, Relator Vuyyuru sought an undetermined amount "duly trebled in addition to a fine of not less than $5,000 per violation and not more than $10,000 together with attorneys' fees and costs." (J.A. 142).

According to the Third Amended Complaint, Dr. Jadhav is a gastroenterologist, who practices medicine in Virginia at Southside Regional Medical Center[2] (SRMC) and John Randolph Medical Center[3] (JRMC), through the SGA Practice. Dr. Jadhav is the president and sole shareholder of the SGA Practice. As part of his practice, Dr. Jadhav performed medical procedures such as colonoscopies, endoscopies, esophago gastro duodonoscopies (EDG), percutaneous endoscopic gastrostomy tube placements (PEG tube placement), and biopsies.

We note, as did the district court, that the Third Amended Complaint is inartfully drafted. Nonetheless, we state with fair assurance that the crux of Relator Vuyyuru's claims under the FCA is that Defendants fraudulently billed the government, through the Medicare and Medicaid programs, for unnecessary or incomplete medical procedures performed by Dr. Jadhav. With respect to the nature of the alleged unnecessary

---

[2]According to the Third Amended Complaint, defendant The Cameron Foundation, a Virginia non-profit corporation, is the successor in interest to the Hospital Authority of the City of Petersburg, which hospital authority operated SRMC until its sale in or about 2003 to defendant Petersburg Hospital Company, LLC, which limited liability company then owned and operated SRMC during the remaining time relevant to the Third Amended Complaint.

[3]According to the Third Amended Complaint, defendant Columbia/HCA John Randolph, Inc., a Virginia corporation, owned and operated JRMC during all times relevant to the Third Amended Complaint.

medical procedures, the Third Amended Complaint alleges: (1) through March 2005, Dr. Jadhav, while performing colonoscopies, routinely took an unnecessary biopsy of the Ileocecal Valve (IC Valve) when he was unable to find a polyp; (2) Dr. Jadhav unnecessarily performed an EDG on a patient and a PEG tube replacement on consecutive days, when the two procedures could have been performed on the same day for a lower rate; (3) during sometime in the first half of 2002, Dr. Jadhav performed an unnecessary colonoscopy and biopsy of the IC Valve on a sixty-five year old female; (4) in August 1997, Dr. Jadhav performed an unnecessary endoscopy on a seventy-two year-old female; (5) on November 27, 2001, Dr. Jadhav performed an unnecessary EDG with biopsy on a seventy-two year old female, and thirteen days later performed an unnecessary colonoscopy with biopsy on the same patient; and (6) on January 3, 2000, Dr. Jadhav performed an unnecessary colonoscopy on a seventy-one year old female. With respect to each alleged unnecessary medical procedure just listed in (2) through (6), the Third Amended Complaint alleges that Dr. Jadhav performed such unnecessary procedure "for the sole purpose of enhancing his income and that of **SRMC and JRMC**." (J.A. 133) (emphasis added).

With respect to the procedures allegedly not completed by Dr. Jadhav, but for which Defendants allegedly fraudulently billed the government, the Third Amended Complaint offers no information regarding individual patients. Rather, it alleges in general that "Dr. Jadhav frequently billed for the procedure of a colonoscopy and upper-endoscopy when Dr. Jadhav failed to complete the procedure." (J.A. 134). Moreover, almost as an aside, the Third Amended Complaint alleges:

> Defendant Dr. Jadhav for a period of nearly 10 years failed to dictate the required consult note before billing, making minor notations only in the chart, while billing for a level 3 to 5 consult. At SRMC (different than his practice at JRMC) [ ] Dr. Jadhav routinely and in most cases did not provide a dictation for con-

sults and failed to perform general multi-system examinations failing to follow CMS guidelines since 1997 for which he billed or caused to be billed to the United States Government as though the CMS guidelines were being met.

(J.A. 136).[4]

Of relevance to the issues in the present appeal, on October 6, 2006, Defendants moved to dismiss the Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(1), contending that the jurisdictional bar set forth in 31 U.S.C. § 3730(e)(4) operated to bar Relator Vuyyuru's FCA claims.[5] Defendants attached evidentiary exhibits to their Consolidated Memorandum of Law in support of such motion, which exhibits they asked the district court to consider in resolving their jurisdictional challenge. In relevant part, § 3730(e)(4) provides as follows:

**(e) Certain Actions barred.—**

\* \* \*

**(4)(A)** No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions . . . from the news media, unless . . . the person bringing the action is an original source of the information.

**(B)** For purposes of this paragraph, "original source" means an individual who has direct and

---

[4]CMS is an abbreviation for the Centers for Medicare and Medicaid Services, which is the agency of the Department of Health and Human Services responsible for administering the Medicare program.

[5]At the same time, Defendants moved to dismiss the Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Such motion is not at issue on appeal.

independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

*Id.*

In support of their motion to dismiss for lack of subject matter jurisdiction, Defendants contended that the allegations in the Third Amended Complaint were derived from publicly disclosed information, and that Relator Vuyyuru did not carry his burden of establishing he was entitled to the "original source" exception to § 3730(e)(4)(A)'s public disclosure jurisdictional bar.

With respect to the public disclosure issue, Defendants contended that the allegations in the Third Amended Complaint were derived from numerous articles appearing in the Virginia Times newspaper prior to Relator Vuyyuru's initial filing of this action. At all times relevant to the allegations of the Third Amended Complaint, Relator was the publisher of the Virginia Times. Defendants attached the articles as exhibits to their Consolidated Memorandum of Law in support of their Rule 12(b)(1) motion, which memorandum of law stated the following on the subject:

On March 30, 2005, roughly a year before Plaintiff filed his Complaint, the *Virginia Times* newspaper published a front-page article titled "Alleged insurance, quality-of-care fraud at SRMC." (A copy of the article is attached as Ex. G.) The article, written by Dorothy Rowley, a staff writer for the newspaper, described an allegedly fraudulent scenario involving IC-Valve procedures and colonoscopies allegedly performed in less than five minutes by Dr. Jadhav [at] SRMC. *See id.* Notably, Ms. Rowley cited "[n]ursing sources who worked with Jadhav" as

> providing the factual details contained in the article. *Id.* The Virginia Times also published a flurry of other articles alleging fraud by Dr. Jadhav, SRMC, and JRMC, all of which asserted improper Medicare and Medicaid billing. (Copies of the Articles are attached as Ex. H.).

(J.A. 174-75). Defendants also pointed the district court to an excerpt from a deposition given by Relator Vuyyuru in a state court malpractice action against him and Columbia/HCA John Randolph, Inc. (owner and operator of JRMC) just ten days after he initially filed the present *qui tam* action. When asked during the deposition whether he had provided or been a source for several articles in the Virginia Times, Relator Vuyyuru responded:

> No, they may ask—the reporters, if they have something, they don't understand something in medicine or something like that, they may ask me some kind of medical expertise, they may ask sometimes, but I don't recall all the particular details, you know, I have medical discussions with reporters. But most of the time, they publish these articles talking to various people, various hospital people and all this stuff.
>
> If you want, you have to go directly to the reporters about that. I'm only the publisher.

(J.A. 318).

Relator Vuyyuru's response to Defendants' Rule 12(b)(1) motion focused almost exclusively upon the original source exception to § 3730(e)(4)(A)'s public disclosure jurisdictional bar. With respect to his deposition testimony, Relator Vuyyuru argued that Defendants were taking such testimony out of context. As far as extrinsic evidence goes, Relator Vuyyuru attached two items of extrinsic evidence to his written response. Notably, prior to the morning of the subsequent

hearing on Defendants' Rule 12(b)(1) motion, Relator Vuy-yuru did not request discovery of any kind in order to respond to Defendants' Rule 12(b)(1) motion.

The first attachment to Relator Vuyyuru's written response was his own sworn declaration, in which the following statements arguably went to his burden to establish subject matter jurisdiction: (1) "Long before the March 30, 2005 front-page article titled 'Alleged insurance, quality-of-care fraud at SRMC', I was speaking with the FBI and [ ] several Assistant U.S. Attorney Generals and other government officials describing the fraudulent scenario involving IC-Valve procedures and colonoscopies performed in less than five minutes by Dr. Jadhav." (J.A. 363); (2) "In and around 2002, 2003 and 2004, I spoke with FBI Agents Vanosten and Irons regarding the improper medical procedures and Medicaid Fraud by Dr. Jadhav, SRMC and JRMC." (J.A. 364); (3) "Additionally, in and around 2002 and 2003, I spoke with the Attorney General's Office with a representative responsible for investigating Medicaid Fraud regarding the improper medical procedures by Dr. Jadhav and billing fraud at both SRMC and JRMC . . . ." *Id.*; (4) he "alleged to . . . the FBI . . ." that Dr. Jadhav had performed an unnecessary biopsy upon his (Relator Vuyyuru's) patient Donald F. Case, Jr. and "falsified by creating a history and physical (H&P) in the patient's chart after the procedure," and that such "conduct was part of a consistent pattern by Dr. Jadhav resulting in many false claims to Medicare and Medicaid . . . ." (J.A. 364-65); and (5) "As director of endoscopy at JRMC, I investigated Dr. Jadhav and presented the data in multiple meetings from 2001 to 2005, including 'who, what, when, where, and how' to administration at JRMC . . . ." *Id.* at 365.

The second attachment is a copy of a page of the Virginia Times, publishing a letter, dated April 22, 2005, by Donald F. Case, Jr., to the Virginia Times, in which Mr. Case explains that Dr. Jadhav performed a colonoscopy upon him without

his permission. Notably, Mr. Case stated that he was in his "50's . . . ." (J.A. 366).

Approximately two months after Defendants moved to dismiss the Third Amended complaint for lack of subject matter jurisdiction, Relator Vuyyuru served subpoenas on several pathologists seeking records related to colonoscopy with biopsy procedures, performed or reviewed by Dr. Jadhav and the respective pathologist since January 1, 1997. Defendants moved to quash the subpoenas, *inter alia*, on the basis that the parties had not yet conducted a Rule 26(f) discovery conference, *see* Fed. R. Civ. P. 26(d), (f), and on the basis that the subpoenas constituted an improper attempt by Relator Vuyyuru to investigate his false claim allegations before establishing subject matter jurisdiction. As part of the motion, Defendants requested entry of a protective order precluding Relator Vuyyuru "from further attempts at obtaining discovery from any source prior to the Court's ruling on Defendants' Motions to Dismiss [Relator Vuyyuru's] claims pursuant to Rules 12(b)(1) and 12(b)(6) and the parties' Rule 26(f) conference . . . ." (J.A. 393-94). Relator Vuyyuru filed a response, requesting the motion be denied. A fair reading of Relator Vuyyuru's response makes clear that he served the subpoenas on the pathologists in order to seek evidence to support the merits of his FCA claims, not to seek evidence to support the jurisdictional allegations of the Third Amended Complaint.

During this back and forth over the subpoenas, this action was assigned to United States District Judge Richard L. Williams. As best we can discern from the appellate briefs and the record below, Judge Williams (through his law clerk) informed the parties that he would not issue a pretrial order, which sets forth discovery deadlines for the merits of the action, until after disposition of the motions to dismiss had occurred.

On January 26, 2007, approximately two and one-half months after Defendants had filed their Rule 12(b)(1) motion,

the district court held a hearing on such motion. By this time, the case had been transferred from United States District Judge Richard L. Williams to United States District Judge Robert E. Payne. Thus, Judge Payne conducted the hearing.

On the morning of the hearing, in support of his opposition to Defendants' Rule 12(b)(1) motion, Relator Vuyyuru submitted a supplement to his earlier declaration. After the district court commented that such supplemental declaration was "[h]ardly timely," Relator Vuyyuru stated that the "most important part of [the supplemental declaration] comes from a report that *was received yesterday* from the DMAS, the Department of Medical Assistance Services for the State of Virginia." (J.A. 476) (emphasis added). According to the supplemental declaration, DMAS administers Medicaid money to providers, including Dr. Jadhav, and the report contains "information regarding the billings made by [Dr. Jadhav] to DMAS from and payments from DMAS to [Dr. Jadhav]." (J.A. 427). Relator Vuyyuru attached the report as an exhibit to his supplemental declaration. The report contains no patient names or ages; instead it lists, in a spreadsheet format, various procedure codes relating to colonoscopies, amounts billed and corresponding amounts paid.

Additionally, Relator Vuyyuru's supplemental declaration states that, in 2001, he was the director of endoscopy at JRMC, and later assistant director. Worth mentioning for purposes of this appeal, he also declared that: (1) he was on the medical staff at SRMC from 1997 until 2004; (2) from 1997 through 2005, he monitored and investigated work performed by Dr. Jadhav, including reviewing his charts; (3) he observed that Dr. Jadhav failed to perform and record comprehensive history and physical examinations on the majority of his patients who would qualify for use of current procedural terminology code (CPT code) 99253, which code, according to Relator Vuyyuru, is defined, *inter alia*, as "a detailed history; a detailed examination; and medical decision making of low complexity," (J.A. 428); (4) his interviews with individuals

who performed billing services under the direction of Dr. Jadhav and his review of Dr. Jadhav's patient records confirmed that Dr. Jadhav "billed both Medicaid and Medicare and further that the most common code that he used was CPT code 99253," (J.A. 429); (5) based upon his observation of Dr. Jadhav's practice, and "investigation, including the review of his charts, [he] determined that [Dr. Jadhav] did not provide the services required to bill patients for CPT code 99253 as he did," *id.*; (6) by reviewing Dr. Jadhav's patient charts, he observed a pattern by which if a patient did not have a polyp, it was Dr. Jadhav's regular practice to perform a biopsy of the IC-Valve; (7) Relator Vuyyuru performed colonoscopies upon several of Dr. Jadhav's patients, after Dr. Jadhav had already performed incomplete colonoscopies upon such patients, and found polyps and tumors that Dr. Jadhav failed to observe; (8) the DMAS billing report shows ninety-three billings from 2001 to 2005 for which Dr. Jadhav billed the government for biopsied IC-Valves; and (9) in his investigation, he "observed that at no time did [Dr. Jadhav] biopsy the IC-Valve when he was able to bill for removing a polyp or AVM or other legitimate pathology, evidencing that his biopsies of IC-Valve was done solely to increase billing," which practice is reflected in the attached DMAS billing report. (J.A. 430-31).

During the hearing, Relator Vuyyuru, for the first time, requested leave to conduct discovery on the jurisdictional issues raised in Defendants' Rule 12(b)(1) motion, in an effort to prove the facts necessary to avoid dismissal of his FCA claims pursuant to § 3730(e)(4)(A)'s public disclosure jurisdictional bar. In its subsequent order granting Defendants' Rule 12(b)(1) motion, the district court ruled that Relator Vuyyuru was not entitled to more time to gather the type of evidence required to establish subject matter jurisdiction over his FCA claims. As its rationale for so ruling, the district court stated:

> [P]rior to the January 27, 2007 hearing on the defendants' Motions . . . [p]ursuant to Rules 12(b)(1) and

> 12(b)(6), the plaintiff did not request a period of dis-
> covery in order to respond to that motion, or an evi-
> dentiary hearing to prove jurisdiction. . . . Only at the
> end of that hearing, after failing to provide any spe-
> cific facts in response to the Court's request to do so
> at the hearing, did plaintiff request more time to pro-
> vide them. Plaintiff, however, had over ten months
> to provide such facts. He filed four different itera-
> tions of a complaint. He also was on notice for over
> three months that defendants were challenging sub-
> ject matter jurisdiction in this case. . . . Plaintiff,
> therefore, had ample opportunity to gather the type
> of evidence required to demonstrate to the Court that
> subject matter jurisdiction exists in this case. He did
> not gather any.

(J.A. 565 n.3).

Through colloquy with counsel, the district court was able
to establish several significant facts during the hearing, which
were relevant to the jurisdictional issues of fact under
§ 3730(e)(4)(A)-(B). Relator Vuyyuru withdrew from practic-
ing medicine at SRMC in March 2003, followed by SRMC's
official suspension of his privileges to practice medicine at its
facility in March 2004. Moreover, JRMC suspended Relator
Vuyyuru's privileges to practice medicine at its facility in
April 2005.

On March 28, 2007, the district court granted Defendants'
Rule 12(b)(1) motion. Specifically, the district court dis-
missed Relator Vuyyuru's FCA claims pursuant to
§ 3730(e)(4)(A)'s public disclosure jurisdictional bar. In rul-
ing on the motion, the district court expressly made a finding
that the allegations in the Third Amended complaint, pertain-
ing to the FCA claims, "were actually derived from" the Vir-
ginia Times articles. (J.A. 560) (internal quotation marks
omitted). Moreover, the district court also expressly held that
Relator Vuyyuru "has not demonstrated the specific facts

required for the Court to grant him 'original source' status." *Id.* The district court dismissed Relator Vuyyuru's remaining state law claims for lack of federal question jurisdiction, *see* 28 U.S.C. § 1331, and for lack of diversity jurisdiction, *id.* § 1332.

On April 11, 2007, The Cameron Foundation moved for an award of $100,112.50 in attorneys' fees and costs on the ground that Relator Vuyyuru's claim that the district court possessed subject matter jurisdiction and the FCA claims themselves were clearly frivolous, clearly vexatious, and clearly brought primarily for the purposes of harassment. Relator Vuyyuru opposed the motion on the following grounds: (1) neither his claim to proper relator status nor his FCA claims were clearly frivolous, clearly vexatious, or brought for the purposes of harassment; (2) the fees sought were excessive; and (3) he lacked the ability to pay. On May 14, 2007, the district court ordered The Cameron Foundation to submit a revised fee application, itemizing attorneys' fees in such a manner that lists entries only relating to the FCA claims and documenting "the reasonableness of the claimed hourly rate by proofs from sources outside the law firm of which [The Cameron Foundation's] counsel are members." (J.A. 707). The district court also ordered Relator Vuyyuru to provide specific financial information detailing his inability to pay attorneys' fees. Relator Vuyyuru subsequently waived his request to have the district court consider his financial condition in connection with The Cameron Foundation's fee application.

In its revised fee application, The Cameron Foundation sought $68,228.75 in attorneys' fees and costs. The district court determined this amount to be reasonable and supported by the evidence. Accordingly, on August 27, 2007, the district court ordered Relator Vuyyuru to pay The Cameron Foundation $68,228.75 in attorneys' fees and costs under 31 U.S.C. § 3730(d)(4).

Relator Vuyyuru separately noted timely appeals of the district court's order of dismissal and its fees/costs award. Those appeals have been consolidated for our review.

## II.

We first address Relator Vuyyuru's challenge to the district court's dismissal of his FCA claims for lack of subject matter jurisdiction. Relator Vuyyuru's challenge has two prongs. The first contends the district court erred in the manner in which it viewed the evidence. The second contends the district court erred by ruling on the Defendant's Rule 12(b)(1) motion without affording him the opportunity to conduct discovery on the jurisdictional issues of fact. Neither has merit.

In the first prong of Relator Vuyyuru's challenge to the district court's Rule 12(b)(1) dismissal of his FCA claims, Relator Vuyyuru takes issue with the district court's deciding 31 U.S.C. § 3730(e)(4)'s "based upon" and "original source" issues as a trier of fact, without giving him the benefit of viewing the evidence in the record on those issues in the light most favorable to him and drawing all reasonable inferences from such evidence in his favor. According to Relator Vuyyuru, he was entitled to such a favorable viewing, because § 3730(e)(4)'s "based upon" and "original source" issues are jurisdictional issues inextricably intertwined with the merits of his FCA claims. Moreover, according to Relator Vuyyuru, when the record evidence regarding § 3730(e)(4)'s "based upon" and "original source" issues is viewed in the light most favorable to him and all reasonable inferences are drawn in his favor, the conclusion looms that his FCA claims should have survived Defendants' Rule 12(b)(1) motion.

Before specifically addressing Relator Vuyyuru's individual arguments and contentions as just set forth, we endeavor to review the appropriate legal framework under which we must consider them. The district courts of the United States are courts of limited subject matter jurisdiction. *Exxon Mobil*

*Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). They possess only the jurisdiction authorized them by the United States Constitution and by federal statute. *Bowles v. Russell*, 127 S. Ct. 2360, 2365 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006).

When, as here, a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) ("The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction."). Unless "the jurisdictional facts are intertwined with the facts central to the merits of the dispute," the district court may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits. *Id.*; *see also Arbaugh*, 546 U.S. at 514 ("[I]n some instances, if subject-matter jurisdiction turns on contested facts, the trial judge may be authorized to review the evidence and resolve the dispute on her own. If satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts.") (internal citations omitted); *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) ("Factual attacks . . . challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.") (internal quotation marks omitted); *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (district "court may consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning [subject matter] jurisdiction"). We review a district court's jurisdictional findings of fact on any issues that

are not intertwined with the facts central to the merits of the plaintiff's claims under the clearly erroneous standard of review and any legal conclusions flowing therefrom *de novo*. *Velasco v. The Government of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) ("We review the district court's factual findings with respect to jurisdiction for clear error and the legal conclusion that flows therefrom *de novo*."); *Sligh v. Doe*, 596 F.2d 1169, 1171 & 1171 n.9 (4th Cir. 1979) (reviewing district court's finding of jurisdictional fact that parties had diversity of citizenship under the clearly erroneous standard of review and describing the applicability of such standard as "plain"); *see also Native American Distrib. v. Seneca-Cayuga Tobacco Co.*, 546 F.3d 1288, 1293 (10th Cir. 2008) ("Where, as here, subject-matter jurisdiction turns on a question of fact, we review the district court's factual findings for clear error and review its legal conclusions *de novo*."). If the jurisdictional facts "are so intertwined with the facts upon which the ultimate issues on the merits must be resolved," *Adams*, 697 F.2d at 1220, "the entire factual dispute is appropriately resolved only by a proceeding on the merits," *id.* at 1219.

In the case at hand, 31 U.S.C. § 3730(e)(4) sets forth the jurisdictional facts of which Relator Vuyyuru bore the burden of proving by a preponderance of the evidence in order to survive Defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 468 (2007) (§ 3730(e)(4) is a "jurisdiction-removing provision"). Once Defendants challenged the district court's subject matter jurisdiction under § 3730(e)(4), when considered in light of the record below, Relator Vuyyuru first bore the burden of proving that the allegations underpinning his FCA claims were not "based upon" the Virginia Times articles. *Id.* If he carried this burden, § 3730(e)(4)(A)'s public disclosure jurisdictional bar would not apply. However, if he failed to carry this burden, he then bore the separate and distinct burden of proving himself entitled to original source status, which burden required him to prove that he was "an individual who has direct and indepen-

dent knowledge of the information on which the allegations [in the Third Amended Complaint] are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). *See also Rockwell*, 549 U.S. at 471-72 (holding that the "information" to which § 3730(e)(4)(B) speaks, refers to the information on which relator's allegations are based, not upon the information on which the publicly disclosed allegations that triggered § 3730(e)(4)(A)'s public disclosure jurisdictional bar are based).

Hoping to avoid appellate review of the district court's jurisdictional findings under the clearly erroneous standard, Relator Vuyyuru baldly asserts that the jurisdictional issues are intertwined with the factual issues central to the merits of his FCA claims. We disagree. A direct comparison of the nature of the jurisdictional issues with the factual issues central to the merits of Relator Vuyyuru's FCA claims dispels any notion of such intertwining. Relator Vuyyuru's FCA claims arise under 31 U.S.C. § 3729(a)(1)-(3). In *seriatim*, these statutory subsections impose liability on any person who "knowingly presents, or causes to be presented, to [the government] a false or fraudulent claim for payment or approval," *id.* § 3729(a)(1), "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the [g]overnment," *id.* § 3729(a)(2); or "conspires to defraud the [g]overnment by getting a false or fraudulent claim allowed or paid," *id.* § 3729(a)(3).

In *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 128 S. Ct. 2123 (2008), the Supreme Court recently clarified the differing proof requirements of these three subsections. As the plain language of § 3729(a)(1) suggests, liability under subsection (a)(1) requires proof that the defendant actually presented or caused to be presented a false or fraudulent claim to the government. *Allison Engine Co., Inc.*, 128 S. Ct. at

2129. Although subsection (a)(2) has no such requirement, it does require proof "that the defendant made a false record or statement for the purpose of getting 'a false or fraudulent claim paid or approved by the [g]overnment.'" *Allison Engine Co., Inc.*, 128 S. Ct. at 2130. With respect to subsection (a)(3), where as here, "the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of 'getting' the false record or statement to bring about the [g]overnment's payment of a false or fraudulent claim." *Allison Engine Co., Inc.*, 128 S. Ct. at 2130. Moreover, under subsection (a)(3), "it must be established that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim." *Allison Engine Co., Inc.*, 128 S. Ct. at 2130-31.

Logic dictates that whether (1) any of the Defendants ever presented or caused to be presented a false or fraudulent claim to the government, (2) made a false record or statement for the purpose of getting a false or fraudulent claim paid or approved by the government, or (3) conspired for the purpose of using a false record or statement to bring about the government's payment of a false or fraudulent claim, are not issues intertwined with whether (1) the allegations in the Third Amended Complaint were based upon the Virginia Times articles or (2) Relator Vuyyuru had direct and independent knowledge of Defendants' alleged conduct giving rise to FCA liability, *i.e.*, the substantive issues. In the words of the Third Circuit:

> The jurisdictional requirements of the FCA involve assessing whether the allegations and transactions constituting the bases of the claims were publicly disclosed and whether, if they were, the relator is an original source—meaning that he has direct and independent knowledge of the information. 31 U.S.C. §§ 3730(e)(4)(A)-(B). If a relator gets over

these hurdles, he must then make his substantive case.

*United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 515 (3d Cir. 2007). The proof required to establish the substantive elements of Relator Vuyyuru's claims under § 3729(a)(1)-(3) is wholly distinct from that necessary to survive Defendants' jurisdictional challenge under § 3730(e)(4). *See Atkinson*, 473 F.3d at 515. *See also United States ex rel. Wilson v. Graham County Soil & Water Conservation Dist.*, 528 F.3d 292, 309 (4th Cir. 2008) (remanding *qui tam* action to district court with instructions to make the necessary jurisdictional findings of fact pertaining to § 3730(e)(4)'s jurisdictional bar, after "permit[ting] the parties to submit additional evidence as may be necessary for the court to make the factual determinations upon which the jurisdictional questions turn").

Having determined that the jurisdictional issues are not intertwined with the central merits of Relator Vuyyuru's FCA claims, we now turn to review the district court's jurisdictional findings of fact under the clearly erroneous standard of review. Under this deferential standard of review, we will not overturn a district court's finding of fact "simply because we would have decided the case differently." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (internal quotation marks omitted). Rather, we will only overturn a district court's finding of fact as clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

The first jurisdictional finding of fact under review is the district court's finding that the allegations of the Third Amended Complaint pertaining to the FCA claims were based upon, *i.e.*, actually derived from, the Virginia Times articles. *United States ex rel. Siller v. Becton Dickinson & Co.*, 21

F.3d 1339, 1348 (4th Cir. 1994) ("[A] relator's action is 'based upon' a public disclosure of allegations only where the relator has actually derived from that disclosure the allegations upon which his *qui tam* action is based."). After reviewing the relevant evidence on this issue ourselves, we are not left with the definite and firm conviction that a mistake has been committed—far from it. The district court correctly observed that many of the substantive allegations in the Third Amended Complaint pertaining to the FCA claims were substantially similar to the allegations in the newspaper article written by reporter Dorothy Rowley and published on the front page of the Virginia Times almost one year prior to Relator Vuyyuru's filing of this action. Given that: (1) the newspaper article preceded Relator Vuyyuru's filing of this action by almost a year; (2) Relator Vuyyuru denied under oath that he had been a source for several articles in the Virginia Times and essentially stated under oath that he had only ever given news reporters background medical information and then only did so when asked to help the reporter understand a medical issue; and (3) Relator Vuyyuru offered no evidence, in the form of a sworn affidavit or otherwise, stating that he was the source of the March 30, 2005 newspaper article by Dorothy Rowley or any of the other Virginia Times articles, the district court logically reasoned that "[t]he remarkable similarities between the news article and the allegations contained in [paragraphs 20 and 27 of the Third Amended Complaint] are significant proof that the latter are 'actually derived' from the former." (J.A. 558).

Relator Vuyyuru does not dispute that the allegations in the March 30, 2005 newspaper article by Dorothy Rowley are remarkably similar to the substantive allegations pertaining to his FCA claims. Rather, he takes issue with the district court's reasoning that the remarkable similarities serve as significant proof that the substantive allegations pertaining to his FCA claims are actually derived from the article, arguing that "[t]here is nothing in the record to show that [he] was not a source for that article." (Relator Vuyyuru's Opening Br. at

32). Relator Vuyyuru's argument is factually wrong and logically flawed. His argument is factually flawed, because, as we have already mentioned, Relator Vuyyuru denied under oath that he had been a source for several articles in the Virginia Times and essentially stated under oath that he had only given news reporters background medical information and then only did so when asked to help the reporter understand a medical issue. While such deposition testimony is not alone conclusive evidence that he was not a source of the Rowley article, it strongly suggests that he was not. Relator Vuyyuru's argument is logically flawed, because it ignores the fact that he bears the burden of proving the necessary jurisdictional facts and begs the question as to why he did not simply offer his own sworn statement to the district court unequivocally stating that he was the primary source for the Rowley article.

In his last shot at attacking the district court's factual finding that his substantive allegations pertaining to the FCA claims were derived from a public disclosure within the meaning of § 3730(e)(4)(A), Relator Vuyyuru points us to the fact that he wrote and published an editorial in the Virginia Times on March 30, 2005, which editorial outlines some of the same allegations against Dr. Jadhav that he makes in his Third Amended Complaint. Relator Vuyyuru complains that the district court's analysis ignored the fact that he wrote this editorial. Assuming *arguendo* that the district court's analysis did ignore the fact that Relator Vuyyuru wrote the editorial, such action is of no benefit to Relator Vuyyuru's cause on appeal. This is because the editorial says absolutely nothing about Dr. Jadhav defrauding the government by presenting or causing to be presented even a single false or fraudulent claim for payment to the government, which is the *sin qua non* of a § 3729(a)(1) violation. *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999). Similarly, the editorial says nothing about the Defendants knowingly making, using, or causing to be made or used, a false record or statement to get a false or

fraudulent claim paid or approved by the government nor anything about the Defendants conspiring to defraud the government by getting a false or fraudulent claim allowed or paid. Thus, even under the best-case-scenario for Relator Vuyyuru, which is that some of the allegations in his Third Amended Complaint pertaining to the FCA claims were not based upon a public disclosure, *e.g.*, Dr. Jadhav performed colonoscopies in less than five minutes when they normally take fifteen minutes, he still cannot show that the district court's "based upon" finding is clearly erroneous. Section 3730(e)(4)(A)'s public disclosure jurisdictional bar encompasses actions even partly based upon prior public disclosures. *See United States ex rel. Boothe v. Sun Healthcare Group, Inc.*, 496 F.3d 1169, 1176 n.6 (10th Cir. 2007); *United States ex rel. Kreindler & Kreindler v. United Technologies Corp.*, 985 F.2d 1148, 1158 (2d Cir. 1993); *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir. 1992). In sum, we hold that the district court's finding that the allegations of the Third Amended Complaint pertaining to the FCA claims were based upon, *i.e.*, actually derived from, the public disclosure of allegations from the news media is not clearly erroneous.

The second and last jurisdictional finding of fact under review is the district court's finding that Relator Vuyyuru is not entitled to original source status under § 3730(e)(4)(B).[6]

---

[6]We note that the dissent takes the position that the district court decided the original source issue in terms of a facial as opposed to a factual challenge to subject matter jurisdiction. *Post* at 36, 40. A full review of the transcript of the hearing on the Rule 12(b)(1) motion and the district court's Memorandum Opinion granting such motion make abundantly clear that the district court ultimately decided the original source issue in terms of a factual challenge to subject matter jurisdiction. For example, in its Memorandum Opinion, the district court observed that Relator Vuyyuru

> has had ample opportunity to supply the Court with the specific facts—as opposed to mere conclusions—showing how and when he obtained direct and independent knowledge of the fraudulent acts that he alleges in his complaint, and to support those allega-

After reviewing the relevant evidence on this issue ourselves, we are not at all left with the definite and firm conviction that a mistake has been committed.

First, although the Third Amended Complaint alleges that Dr. Jadhav and SRMC carried on their fraudulent billing scheme involving the unnecessary biopsy of the IC Valve through March 2005, Relator Vuyyuru cannot be a direct and independent source with respect to any allegations of fraud involving SRMC or its facilities after March 2003, because, by that time, Relator Vuyyuru had withdrawn from practicing medicine at SRMC.[7] *See Rockwell*, 549 U.S. at 474-75 (rela-

---

tions with competent proof. He has, however, utterly failed to do so.

(J.A. 565) (internal citation, quotation marks, and ellipsis omitted). *See also* (J.A. 565 n.3, District Court's March, 28, 2007 Mem. Op.) ("Plaintiff . . . had ample opportunity to gather the type of evidence required to demonstrate to the Court that subject matter jurisdiction exists in this case. He did not gather any."). The irony of the situation is that Relator Vuyyuru also views the district court's ruling on the original source issue as one deciding such issue in terms of a factual challenge to subject matter jurisdiction. Indeed, he repeatedly argues that the district court erred in refusing to grant him additional time to conduct discovery in order to obtain actual fraudulent bills for the purpose of proving, through extrinsic evidence, his entitlement to original source status.

[7]Our dissenting colleague asserts that the district court was presented with evidence casting doubt on the timing of Relator Vuyyuru's departure from SRMC as being March 2003 (such that Relator Vuyyuru would no longer be in a position to gain direct and independent knowledge of any FCA-violative conduct by SRMC after that time). We disagree. First, below, Relator Vuyyuru never disputed defense counsel's statement at the hearing on the Rule 12(b)(1) motion that Relator Vuyyuru "actually withdrew from practicing medicine at [SRMC] in March of '03." (J.A. 498). Moreover, when given the opportunity on appeal to challenge such statement, Relator Vuyyuru did not. Instead, in his Opening Brief on appeal, Relator Vuyyuru stated, in the Statement of the Facts section, that he was "a member of the department of medicine at [SRMC] from 1997 to 2003." (Relator Vuyyuru's Opening Br. at 7). Relator Vuyyuru again made this same statement, in the Argument section of his Opening Brief, in support

tor failed to establish direct and original source status because the only false claims found by the jury involved insolid pondcrete discovered after relator left his employment).

Second, with respect to § 3729(a)(1), there is a glaring lack of evidence to establish that, at the time Relator Vuyyuru filed this action on March 13, 2006 (or even by the time he filed the Third Amended Complaint on August 30, 2006), he had direct and independent knowledge that any Defendant in this case had ever presented or caused to be presented a particular false or fraudulent claim to the government or that he had voluntarily provided the government with such information before filing this action. At most, and this characterization is a stretch, Relator Vuyyuru's evidence on this issue shows that he had direct and independent knowledge that: (1) Dr. Jadhav billed Medicaid and Medicare in general, often using CPT code 99253, which requires the doctor to have performed a detailed medical history; a detailed examination; and medical decision making of low complexity; (2) Dr. Jadhav failed to perform and record a comprehensive history and perform physical examinations on the majority of his patients that would qualify for use of CPT code 99253; and (3) Dr. Jadhav performed an unnecessary biopsy upon his (Relator Vuyyuru's) patient Donald F. Case, Jr. and created a history and physical in the patient's chart after the procedure. The disconnect between this information and Relator Vuyyuru's burden of establishing original source status is obvious. Relator Vuyyuru *never* connected his knowledge of any underperformance of medical care by Dr. Jadhav with an actual claim upon the public fisc by any of the Defendants. Indeed, the single patient which Relator Vuyyuru identifies by name and

_____

of his argument that the district court had ignored the fact that he first obtained the information that was not available to the public by reviewing nonpublic medical records. As evidentiary support for such statement, Relator Vuyyuru cited paragraph 5 of his March 2006 Declaration, stating "From on or about 1997 to 2003, I was a member of the department of medicine at Southside Regional Medical Center." (J.A. 251).

gives some detailed information, *i.e.*, patient Donald F. Case, was not Medicare eligible and Relator Vuyyuru offered no evidence to establish that he was eligible for any other federal health-care assistance program under which any of the Defendants could have made a claim upon the public fisc. Relator Vuyyuru's mere suspicion that there must be a false or fraudulent claim lurking around somewhere simply does not carry his burden of proving that he is entitled to original source status.

Moreover, our analysis does not, as the dissent contends, require that Relator Vuyyuru "prove the particulars of the individual Medicare or Medicaid claims as a condition to proving how he had direct and independent knowledge of the facts giving rise to those claims." *Post* at 43. Rather, our analysis requires, quite logically, that Relator Vuyyuru prove that he has direct and independent knowledge of the facts giving rise to his FCA claims. Therefore, in the case of an (a)(1) claim against a particular defendant, our analysis requires the relator to prove that he has direct and independent knowledge that the defendant had presented or caused to be presented a particular false or fraudulent claim to the government.

Third, Relator Vuyyuru's evidentiary exhibit which he presented for the first time the day of the hearing on Defendants' Rule 12(b)(1) motion to dismiss, the DMAS billing report, is of no aid to him whatsoever. Assuming *arguendo* that such report was somehow probative evidence that Defendants actually submitted false or fraudulent claims for payment to the government, such evidence does nothing to carry Relator Vuyyuru's burden of proving what he knew, at the time he filed this action. Likewise, such evidence does nothing to carry his burden of proving, with respect to each of the Defendants, that he informed the FBI or any federal agency that such Defendant had presented or caused to be presented an actual false or fraudulent claim for payment to the government.

There is also a glaring lack of evidence to establish Relator Vuyyuru's original source status with respect to his allegations pertaining to his § 3729(a)(2) and (a)(3) claims. *Allison Engine Co., Inc.*, 128 S. Ct. at 2129. Suffice it to say that Relator Vuyyuru has offered no more than a scintilla of evidence that he had direct and independent knowledge that any of the Defendants in this case actually made a false record or statement for the purpose of getting a false or fraudulent claim paid or approved by the government, 31 U.S.C. § 3729(a)(2), nor more than a scintilla of evidence that he had direct and independent knowledge that Dr. Jadhav conspired with any of the Defendants to make a false record or statement with the purpose of having a material effect in bringing about the government's payment of a false or fraudulent claim, *id.* at § 3729(a)(3); *Allison Engine Co., Inc.*, 128 S. Ct. at 2130-31.

In the second prong of Relator Vuyyuru's challenge to the district court's dismissal of his FCA claims for lack of subject matter jurisdiction, Relator Vuyyuru contends the district court erred by dismissing his entire action for lack of subject matter jurisdiction without affording him the opportunity to conduct discovery on the jurisdictional issues of fact. In support of this contention, Relator Vuyyuru further contends that when United States District Court Judge Richard L. Williams, communicating through his law clerk, ordered the parties to hold up on discovery until after the pretrial conference, it meant that he was prohibited from conducting discovery on jurisdictional issues of fact necessary to survive Defendants' Rule 12(b)(1) motion.

Relator Vuyyuru's contentions are without merit. First, our review of the record discloses that Relator Vuyyuru had ample notice that Defendants' attack on the basis of the district court's subject matter jurisdiction was a factual attack rather than a facial one. Defendants attached multiple evidentiary exhibits to their Memorandum of Law in support of their Rule 12(b)(1) motion. Relator Vuyyuru acknowledged this fact by stating in his Memorandum in Opposition to Defen-

dants' Rule 12(b)(1) motion that "[t]he [D]efendants essentially ask the court to look outside the pleadings and then to view the evidence in the light most favorable to the moving party . . . ." (J.A. 343). Moreover, Relator Vuyyuru attached two evidentiary exhibits to his Memorandum of Law in Opposition to Defendants' Rule 12(b)(1) motion—(1) his own sworn declaration; and (2) a copy of a page of the Virginia Times, publishing Donald F. Case's April 22, 2005 letter to the Virginia Times—and, just prior to the district court's hearing on the Rule 12(b)(1) motion, Relator Vuyyuru submitted two more evidentiary exhibits in support of his opposition to such motion. As for Judge Richard L. Williams' order to hold up discovery until after the pretrial conference in the case, such order in no way prevented Relator Vuyyuru from conducting discovery on jurisdictional issues of fact, which are wholly separate from issues of fact on the merits. Indeed, if Relator Vuyyuru was unclear as to whether he needed to seek leave to conduct discovery on jurisdictional issues of fact, he could have requested clarification from the district court long before the hearing on Defendants' Rule 12(b)(1) motion, which he did not do. Moreover, the district court did not abuse its discretion in refusing to grant Relator Vuyyuru additional time to conduct discovery on the jurisdictional issues of fact.

Even if we assumed *arguendo* that Relator Vuyyuru was somehow prevented by the district court from conducting discovery on jurisdictional issues of fact, such an assumption would not advance Relator Vuyyuru's case on appeal. This is because Relator Vuyyuru does not identify any evidence that he might have obtained through discovery, which would be relevant to establish the jurisdictional facts in his favor. Similarly, Relator Vuyyuru did not proffer below any sworn testimony that he was prepared to give on the stand at the hearing which would have carried his burden of establishing the jurisdictional facts under § 3730(e)(4) in his favor. One also wonders why Relator Vuyyuru would have even needed discovery regarding, for example, how he gained direct and independent

knowledge of the alleged false billings submitted by Defendants, because such information should be within his own custody and control.

In sum, we hold the district court's findings with respect to the jurisdictional issues of fact under § 3730(e)(4) are not clearly erroneous, and thus, the district court did not err as a matter of law in dismissing the Third Amended Complaint for lack of subject matter jurisdiction. Accordingly, we affirm such dismissal.

### III.

We next address Relator Vuyyuru's challenge to the district court's award of attorneys' fees and costs to The Cameron Foundation. Relator Vuyyuru's challenge is without merit.

Upon motion by The Cameron Foundation, the district court awarded it the sum of $68,228.75 in attorneys' fees and costs under 31 U.S.C. § 3730(d)(4), which statutory subsection provides that, where the government does not proceed with an FCA claim and the relator conducts the action,

> the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

*Id.* From our careful reading of the district court's August 27, 2007 Memorandum Opinion addressing The Cameron Foundation's motion for an award of attorneys' fees and costs, we are convinced that the district court based its attorneys' fees/costs award upon its findings that The Cameron Foundation prevailed in this action, and that Relator Vuyyuru's claim of subject matter jurisdiction over his FCA claims was clearly frivolous.

Relator Vuyyuru first attacks the district court's attorneys' fees/costs award on the basis that the district court erroneously ignored the appropriate standard in determining whether he was a proper relator under § 3730(e)(4). In this regard, Relator Vuyyuru makes much the same arguments that he made in challenging the district court's Rule 12(b)(1) dismissal of the Third Amended Complaint. According to Relator Vuyyuru, the district court's action in ignoring the appropriate standard in determining whether he was a proper relator under § 3730(e)(4) warrants reversal of the dismissal order, which reversal, in turn, "necessitates reversal of the attorney fees award." (Relator Vuyyuru's Opening Br. at 49). Relator Vuyyuru then goes on to argue that:

> even without a reversal of the dismissal, it is error on the record in this case to find that [he] clearly had no reasonable chance of success proving that he had direct and independent knowledge of the information on which the allegations were based and had voluntarily provided information to the Government before filing this action under the FCA based on the information.

*Id.*[8] Finally, Relator Vuyyuru argues that the amount of the attorneys' fees/costs award is excessive. In this regard, Relator Vuyyuru challenges the number of attorney hours credited by the district court and the district court's determination that attorney Rita Davis' billing rate of $310 per hour is reasonable.

---

[8]For the first time in this appeal, Relator Vuyyuru argues in his Reply Brief that The Cameron Foundation did not "prevail[ ]" in this action, as that term is used in § 3730(d)(4). We do not address this argument, because having been raised for the first time on appeal in Relator Vuyyuru's Reply Brief, the argument is abandoned. *See Yousefi v. INS*, 260 F.3d 318, 326 (4th Cir. 2001) (concluding that petitioner abandoned argument on appeal raised for the first time in reply brief by failing to raise it in opening brief); *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999) (concluding that claim not properly raised in appellant's opening brief is deemed abandoned).

We address each of Relator Vuyyuru's arguments in turn, reviewing the district court's decision to award The Cameron Foundation attorneys' fees and costs under § 3730(d)(4) and the amount of such award for abuse of discretion. *Mikes v. Straus*, 274 F.3d 687, 704 (2d Cir. 2001) ("We review for abuse of discretion both the decision to grant attorneys' fees under § 3730(d)(4) of the False Claims Act and the amount."). "Our review of the district court's award is sharply circumscribed; we have recognized that because a district court has close and intimate knowledge of the efforts expended and the value of services rendered, the fee award must not be overturned unless it is clearly wrong." *Plyler v. Evatt*, 902 F.2d 273, 277-78 (4th Cir. 1990) (internal quotation marks and alterations omitted).

The FCA does not define the term "clearly frivolous," as that term is found in § 3730(d)(4). For purposes of this appeal only, we accept Relator Vuyyuru's suggested definition and ask whether, on the record in this case, when viewed objectively, did Relator Vuyyuru's claim that he qualified as a proper relator under § 3730(e)(4), clearly have no reasonable chance of success? *Mikes*, 274 F.3d at 705 (upholding award of attorneys' fees under § 3730(d)(4)'s clearly frivolous element on the basis that plaintiff's allegations clearly had no chance of success, because they were bereft of any objective factual support). Without a doubt, we answer this question in the affirmative. As we have already extensively outlined the momentous failings of Relator Vuyyuru's evidence pertaining to his burden of establishing himself as a proper relator in order to avoid § 3730(e)(4)'s public disclosure jurisdictional bar, we will not reiterate such analysis here. Suffice it to say, that, when the evidence in the record is viewed objectively, Relator Vuyyuru's claim that he qualified as a proper relator clearly had no reasonable chance of success. In sum, we hold the district court did not abuse its discretion in deciding to award The Cameron Foundation attorneys' fees and costs under § 3730(d)(4).

Turning to the question of whether the district court abused its discretion regarding the amount of attorneys' fees and costs that it awarded, we hold that such amount is not excessive. In calculating an appropriate attorneys' fee award, a district court must first determine the lodestar amount (reasonable hourly rate multiplied by hours reasonably expended), applying the *Johnson*/*Barber* factors when making its lodestar determination. *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir. 1978) (adopting twelve factor test set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

> This court has summarized the *Johnson* factors to include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Spell v. McDaniel*, 824 F.2d 1380, 1402 n.18 (4th Cir. 1987).

In making its lodestar calculation, the district court used the $310 per hour figure for attorney Rita Davis sought by The Cameron Foundation. Our review of the record discloses that the district court did not abuse its discretion in using this figure. The declarations and submissions attached to The Cameron Foundation's Revised Fee Application documented the

hourly rates actually paid by The Cameron Foundation, provided evidence of attorney Rita Davis' actual billing practices, and established that $310 per hour for Rita Davis was reasonable in light of the standard charges for like services by the law firm Hunton & Williams in similar cases and for the fees customarily charged in the relevant market for attorneys of Rita Davis' experience and performance level.

Finally, although Relator Vuyyuru attempts to nitpick the number of hours the district court determined that attorneys for The Cameron Foundation reasonably expended in defending against his FCA claims, our review of the record discloses that the district court did not abuse its discretion in this regard.[9]

## IV.

In conclusion, we hold the district court did not err by: (1) dismissing the Third Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1); and (2) awarding The Cameron Foundation $68,228.75 in attorneys' fees and costs under 31 U.S.C. § 3730(d)(4).[10]

---

[9]We also reject as without merit Relator Vuyyuru's challenge to the district court's granting of The Cameron Foundation's motion to strike a supplemental brief and supporting declaration filed by Relator Vuyyuru on August 8, 2007, in which he made various assertions about The Cameron Foundation's authority to indemnify Petersburg Hospital Company, L.L.C. As the district court cogently explained in ruling on the motion, it never granted Relator Vuyyuru leave to file the brief and the issues raised in it were not raised in his original brief in opposition to The Cameron Foundation's motion for attorneys' fees and costs, "even though it was clear in that application that The Cameron Foundation had assumed the defense of Petersburg Hospital Company LLC." (J.A. 928-29). Moreover, "[t]he time entries at issue were also in the original fee application and Plaintiff made no objection to them." (J.A. 929).

[10]To the extent we have not specifically addressed any remaining argument by Relator Vuyyuru in challenge to the district court's dismissal of the Third Amended Complaint or the fees/costs award, we find such arguments without merit.

*AFFIRMED*

REIDINGER, District Judge, dissenting:

Because I believe that the district court clearly erred in finding that Relator Vuyyuru's allegations were "based upon" a public disclosure and that he was not an "original source" of these allegations, I respectfully dissent.

I.

As the majority correctly states, § 3730(e)(4)(A) is a "jurisdiction-removing provision," citing *Rockwell International Corp. v. United States*, 549 U.S. 457, 468 (2007). (Opinion at 18). A defendant may challenge subject matter jurisdiction of a FCA claim via a Rule 12(b)(1) motion to dismiss in one of two ways. First, a defendant may contend "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982), *i.e.*, a "facial attack," *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1260-61 (11th Cir. 1997). When a defendant makes a facial attack upon a complaint for lack of subject matter jurisdiction, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams*, 697 F.2d at 1219. Alternatively, the defendant may contend that the complaint's jurisdictional allegations simply are not true, *id.*, *i.e.*, a "factual attack," *Garcia*, 104 F.3d at 1260. When a factual attack is made, the burden is on the plaintiff to prove the existence of subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). When a defendant challenges the factual basis of a complaint's jurisdictional allegations, the district court may "go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Adams*, 697 F.2d at 1219. In so doing, the

district court "may consider evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." *Id.*

As a threshold matter, it is problematic to ascertain whether the district court undertook to conduct a facial or factual review of the challenge to subject matter jurisdiction in this case. The majority readily concludes that the district court's review was factual. (Opinion at 28-29). With this, I feel compelled to disagree in part. As to the question of whether Relator Vuyyuru's allegations are "based upon" a public disclosure, the district court considered extrinsic evidence consisting of the Virginia Times articles, and thus clearly undertook a factual review. When it moved to the question of whether Relator Vuyyuru was an "original source" of the information giving rise to the allegations, however, the district court was not so clear as to whether it undertook a factual or facial review. The district court repeatedly refers to the allegations found in the "complaint" or the "TAC" (Third Amended Complaint) while asserting that Relator Vuyyuru "consistently has failed to provide specific facts" about these allegations. (J.A. 562). Ultimately, the district court holds that "[i]n light of the generalities and conclusory statements that permeate the TAC [Third Amended Complaint] and the plaintiff's briefs on the jurisdictional issue, the Court cannot making [sic] a finding that plaintiff had 'direct' knowledge of the allegations in the TAC apart from what appeared in the public domain well before the TAC was filed." (J.A. 564). Based on this language, one can only conclude that the district court made its decision based on the allegations rather than the evidence and thus conducted only a facial examination regarding the issues of whether Relator Vuyyuru had "direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B).[1]

---

[1] The majority quite reasonably buttresses its view of the nature of the district court's review by pointing out that Relator Vuyyuru also argues

The district court having undertaken such a hybrid review may not, of itself, constitute error, but it at least requires that the review of these portions of the district court's order be conducted independently of one another, applying the different standards of review under *Adams*.

## II.

This Court has held that "a relator's action is 'based upon' a public disclosure of allegations only where the relator has *actually derived from* that disclosure the allegations upon which his *qui tam* action is based." *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1348 (4th Cir. 1994) (emphasis added). The majority concludes that "the district court logically reasoned that '[t]he remarkable similarities between the news article and the allegations contained in [paragraphs 20 and 27 of the Third Amended Complaint] are *significant proof* that the latter are 'actually derived' from the former.'" (Opinion at 22) (quoting J.A. 558) (emphasis added). I disagree.

*Siller* instructs that finding allegations to be "based upon" a public disclosure requires more than a finding of similarity between the public disclosure and the complaint's allegations. "[I]t is self-evident that a suit that includes allegations that happen to be similar (even identical) to those already publicly disclosed, but were not actually derived from those public disclosures, simply is not, in any sense, parasitic." *Id.* As the *Siller* Court noted, this Court's interpretation of the "based upon" requirement differs from other circuits. *Id.* ("We are

that the district court's review was factual in nature (Opinion at 24-25 n.6), and that the transcript of the proceedings below supports this conclusion as well. It is, however, the disposition of that issue that is before this Court for review, and that disposition is found in the Memorandum Opinion. I believe that the Memorandum Opinion reflects that the nature of the district court's *decision* was an inappropriate hybrid of a facial and factual review.

aware . . . that other circuits have not embraced this interpretation of the phrase, assuming instead that an action is based upon a public disclosure of allegations if its allegations are identical or similar to those already publicly disclosed."). While other circuits may disagree with this approach, *Siller* remains the law in this circuit. Accordingly, I would hold that the district court committed clear error in finding that the similarities between Relator Vuyyuru's allegations and the newspaper articles constituted proof that the allegations were "based upon" a prior public disclosure.

I also do not agree with the majority's suggestion (Opinion at 22-23) that to overcome this "significant proof" Relator Vuyyuru had to produce evidence to show that he was, in fact, the source of the newspaper articles. Under *Siller*, whether Relator Vuyyuru was the source of the newspaper articles is not relevant; what matters is whether he has produced evidence to show that his allegations were not "actually derived from" this public disclosure. Moreover, imposing this requirement upon a relator appears at odds with the Supreme Court's decision in *Rockwell*. *See* 549 U.S. at at 470-72 (holding phrase "information on which the allegations are based" refers to information on which the *relator's allegations* are based, not information on which *publicly disclosed allegations* are based).

The district court concluded that Vuyyuru "consistently has failed to provide specific facts about how he obtained knowledge of the fraudulent acts alleged in the [Third Amended Complaint]." (J.A. 562). It is significant that the district court held that Relator Vuyyuru "failed to provide" evidence, rather than finding his evidence to be unpersuasive. This demonstrates that the district court concluded that Relator Vuyyuru failed to make a prima facie showing to support subject matter jurisdiction. This was error because the evidence before the district court was sufficient to support a conclusion that Relator Vuyyuru had carried his burden of demonstrating that his

knowledge of the alleged fraudulent acts was not "based upon" public disclosure.

The Third Amended Complaint sets forth on its face a basis for Relator Vuyyuru's knowledge separate and apart from the public disclosure. Specifically, Relator Vuyyuru alleges that he learned that Dr. Jadhav had performed unnecessary biopsies by reviewing Dr. Jadhav's medical records and from medical staff who had observed Dr. Jadhav's practices. Relator Vuyyuru further alleges that he discovered that Dr. Jadhav failed to complete colonoscopy procedures (despite billing for complete procedures) through his review of Dr. Jadhav's charts and through his own subsequent examinations of a number of Dr. Jadhav's patients. Relator Vuyyuru specifically alleges that during these examinations, he discovered lesions, polyps, and cancer which would have been detected had Dr. Jadhav in fact performed complete colonoscopy procedures.

Relator Vuyyuru also presented the district court with declarations that include significant evidence regarding the manner in which Relator Vuyyuru obtained knowledge of the fraudulent acts alleged in the Third Amended Complaint. For example, in a declaration filed in support of his original complaint, Relator Vuyyuru testifies that his knowledge of the complaint's allegations was based upon personal observation, information provided to him by medical staff, patients, patients' families, and his review of medical records. In his supplemental declaration, Relator Vuyyuru further clarifies the basis of knowledge of the complaint's allegations separate and apart from the public disclosure of these claims in the media. Specifically, he testifies that from 1997 through 2005, he personally monitored and investigated Dr. Jadhav's work. Relator Vuyyuru makes clear that he personally reviewed Dr. Jadhav's medical charts and specifically observed from this review that Dr. Jadhav had a practice of regularly performing unnecessary biopsies of the IC-valve. Relator Vuyyuru further testifies that in his investigation of Dr. Jadhav's medical charts, he observed that Dr. Jadhav never performed a biopsy

of the IC-valve when he was able to bill for removing a polyp or other legitimate pathology, a practice which Relator Vuyyuru contends constitutes evidence that the biopsies of the IC-valve were done solely to increase billing. Relator Vuyyuru further testifies that he interviewed pathologists at both JRMC and SRMC, who confirmed Dr. Jadhav's practices regarding IC-valve biopsies. Vuyyuru also states in his supplemental declaration that he learned about Dr. Jadhav's allegedly fraudulent billing from his personal interviews of the individuals who performed billing services for Dr. Jadhav as well as through the subsequent colonoscopy procedures Relator Vuyyuru performed on several of Dr. Jadhav's patients during which he found polyps and tumors that Dr. Jadhav would have observed had complete colonoscopy procedures been performed on these patients.

Based upon this evidence regarding the manner in which Relator Vuyyuru obtained knowledge of the fraudulent acts alleged in the Third Amended Complaint, I would hold that the district court erred in concluding that the allegations in the Third Amended Complaint were "based upon" the public disclosure.

### III.

Next, the majority holds that the district court did not err in finding that Relator Vuyyuru was not an "original source" of the Third Amended Complaint's allegations. I disagree for a number of reasons.

The district court limited its analysis on this issue to a review of the *allegations* in the Third Amended Complaint. Thus, even though the district court had before it evidence purporting to support Relator Vuyyuru's contention that he was an original source, the district court concluded that subject matter jurisdiction did not lie based on a facial analysis of the pleadings. The district court, however, failed to construe the allegations in the Third Amended Complaint as true

and did not afford Vuyyuru any of the other protections available under a Rule 12(b)(6) review. *See Adams*, 697 F.2d at 1219 (stating that when facial attack is made, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration"). Had the district court's facial analysis been conducted in accordance with *Adams*, and Relator Vuyyuru's allegations been taken as true, the allegations in the Third Amended Complaint would have been sufficient to show that he acquired knowledge of the alleged fraudulent acts "through his own efforts, [and] without an intervening agency." *United States ex rel. Grayson v. Advanced Mgmt. Tech., Inc.*, 221 F.3d 580, 583 (4th Cir. 2000) (quoting *United States ex rel. Detrick v. Daniel F. Young, Inc.*, 909 F. Supp. 1010, 1016 (E.D. Va. 1995)). Therefore, the district court's order dismissing this action pursuant to Rule 12(b)(1) was in error.

Furthermore, had the district court undertaken to conduct a *factual* review and considered the evidence presented by Relator Vuyyuru, sufficient evidence was presented for Relator Vuyyuru to have carried his burden of demonstrating that he was an original source of the allegations. As detailed above, Relator Vuyyuru presented the district court with declarations that include significant evidence regarding the manner in which Vuyyuru obtained direct and independent knowledge of the fraudulent acts alleged in the Third Amended Complaint.[2]

---

[2]The majority concludes that Relator Vuyyuru could not be "a direct and independent source with respect to any allegations of fraud involving SRMC or its facilities after March 2003, because, by that time, Relator Vuyyuru had withdrawn from practicing medicine at SRMC." (Opinion at 25). The majority notes that the district court learned this information through "colloquy with counsel," (*id.* at 14), but significantly, as the majority points out (Opinion at 25-26 n.7), there is conflicting evidence submitted on this point. Moreover, the transcript of the hearing reveals that Relator Vuyyuru's counsel stated that he was suspended from SRMC in March 2004, while it was the *Defendants'* counsel who asserted that

The district court further found that Relator Vuyyuru's allegation in the Third Amended Complaint that he "notified government authorities" to be non-specific and conclusory and thus insufficient to show that he voluntarily provided this information to the Government before filing the action. (J.A. 564). Again, the district court found itself torn between conducting a facial analysis and a factual analysis by looking only to the allegations pleaded while applying the factual analysis standard. The district court failed to treat as true the allegations of notice to the government, but rather analyzed the allegations as though they were evidence and found them inadequate, while not considering the declarations submitted by Relator Vuyyuru on this issue. In his declaration of October 24, 2006, Relator Vuyyuru asserts that he reported these allegations of fraud to the FBI (J.A. 364) ("[i]n and around 2002, 2003, and 2004, I spoke with FBI Agents Vanosten and Irons regarding the improper medical procedures and Medicaid and Medicare Fraud by Dr. Jadhav, SRMC and JRMC"); the Attorney General's Office (J.A. 364) ("in and around 2002 and 2003, I spoke with the Attorney General's Office with a representative responsible for investigating Medicaid Fraud regarding the improper medical procedures by Dr. Jadhav and billing fraud at both SRMC and JRMC"); and the Center for Quality Health Care (J.A. 364) ("in 2003, I filed a complaint with the Board of Medicine against Dr. Jadhav regarding unnecessary procedures, but was directed to Center for Quality Health Care"). This declaration alone is sufficient to establish that Relator Vuyyuru "voluntarily provided the information to the Government before filing an action under

_____

Vuyyuru was dismissed from SRMC in March 2003. I would not hold such a failure to respond during an attorney colloquy to amount to a concession. In addition, Relator Vuyyuru's supplemental declaration, which was cited by the majority (Opinion at 12), states that he was on the medical staff at SRMC "until 2004." (J.A. 428).

this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B).**³**

IV.

The majority analyzes Relator Vuyyuru's evidence of his direct and independent knowledge very differently from the district court but still finds it wanting. The majority concludes that "there is a glaring lack of evidence to establish that, at the time Relator Vuyyuru filed this action . . . , he had direct and independent knowledge that any Defendant in this case had ever presented or caused to be presented a particular false or fraudulent claim to the government or that he had voluntarily provided the government with such information before filing this action." (Opinion at 26). Specifically, the majority concludes that "Relator Vuyyuru *never* connected his knowledge of any underperformance of medical care by Dr. Jadhav with an actual claim upon the public fisc by any of the Defendants." (*Id.* at 26) (emphasis in original). In short, the majority requires that the Relator prove the particulars of the individual Medicare or Medicaid claims in order to prove how he had direct and independent knowledge of the facts giving rise to those claims. The question of source of knowledge, however, is separate from the underlying merits. Whether a FCA claim is "ultimately flawed on the merits is an analytically distinct question from the one mandated by the FCA for establishing jurisdiction." *Kennard v. Comstock Resources, Inc.*, 363 F.3d 1039, 1047 (10th Cir. 2004) (quoting *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 803 (10th Cir. 2002)). Indeed, to hold that Relator Vuyyuru's Third

---

**³**A subsequent declaration by Relator Vuyyuru, filed after the district court's ruling on the motion to dismiss, provides even more detail regarding his contact with the government regarding these allegations. Relator Vuyyuru states in this declaration that he began his discussions with the United States Attorney in October 1998 and met with several FBI agents from 1998 to 2005. He further asserts that in 2003, he was given a letter providing him certain "protections" related to his cooperation with the government. (J.A. 662).

Amended Complaint fails for lack of subject matter jurisdiction because he has not pled his FCA claims with sufficient specificity would mean that the jurisdictional question is necessarily intertwined with the merits of the case. If the majority is correct, and sufficient evidence of the facts of the underlying FCA claims must be presented in order for the relator to be able to show how he came to possess such knowledge, then the jurisdictional issue is in fact intertwined with the factual issues of the underlying claims, and the district court was required to assume jurisdiction and proceed to decide the case on the merits. "When a factual attack on subject matter jurisdiction involves the merit of a dispute, the proper course of action for the district court. . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999) (quoting *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997)) (internal quotation marks and alterations omitted).

Given the substantive deficiencies identified by the majority, it may well be that Relator Vuyyuru's claims would not withstand Rule 12(b)(6) scrutiny. This appeal, however, does not require the Court to decide whether Relator Vuyyuru has stated a claim upon which relief can be granted, but rather to review only the basic threshold assessment of subject matter jurisdiction under § 3730(e)(4). If we allow a case such as this to cause us to set the jurisdictional bar too high, then legitimate FCA claims may go without redress and may even go unfiled.

V.

Because I believe that the district court's dismissal was in error, I would also vacate the district court's award of attorneys' fees to the Defendants. Moreover, even if the finding of a lack of subject matter jurisdiction were sustained, I would still reverse the award of attorneys' fees. Attorneys' fees may be awarded under § 3730(d)(4) upon a finding "that the claim

of the person bringing the action was clearly frivolous. . . ." 31 U.S.C. § 3730(d)(4). For all of the reasons set forth above, I simply do not believe that Relator Vuyyuru's jurisdictional allegations are "clearly" frivolous.

There is no question that the record presented to the district court was convoluted, due in no small part to the voluminous and oftentimes inartfully drafted filings, and it must have appeared at times that this action was little more than a grudge match between the Relator and the Defendants. The presentation of the facts may have been awkward, and there may well be some substantive flaws in the Relator's claims. At bottom, however, this is a case about a physician who undertook to investigate the medical procedures and billing practices of another physician and the medical facilities at which he worked and found what may well constitute Medicare and Medicaid fraud. Even if such claims may ultimately prove to be frivolous, such frivolousness falls short of the standard of being "clear" based on this record. I would, therefore, vacate the award of attorneys' fees as having been an abuse of discretion.

## VI.

Accordingly, I would vacate the orders of the district court dismissing this action for lack of subject matter jurisdiction and awarding the Defendants attorneys' fees and would remand this matter for further proceedings.